## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| EuCyt Laboratories, LLC | ) | Case No. 20-13181 (LSS) |
| | ) | |
| Debtor, | ) | |
| | ) | |
| Jeoffrey L. Burtch, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Aaron Coats, Travis H. Bird, | ) | Adv. Pro. No. 22-      (LSS) |
| AVEM Holdings, LLC, a Delaware limited | ) | |
| liability company nka AVEM Healthcare, | ) | |
| LLC, AVEM Biopharmaceuticals, LLC, a | ) | |
| Delaware limited liability company, | ) | |
| AVEM Labs, LLC d/b/a AVEM | ) | |
| Laboratories, LLC, a Nevada limited | ) | |
| liability company, AVEM Diagnostics, LLC,) | | |
| a Delaware limited liability company, | ) | |
| AVEM Medical, LLC f/k/a MediSource | ) | |
| Partners, LLC, a Texas limited liability | ) | |
| company and the John Doe Entities, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾) | | |

## COMPLAINT FOR (A) TURNOVER OF ASSETS, PROPERTY, DOCUMENTS, AND RECORDS OF AND RELATING TO THE DEBTOR PURSUANT 11 U.S.C. § 542, (B) FOR AN ACCOUNTING, (C) AVOIDANCE OF THE TRANSFER OF ASSETS PURSUANT TO 11 U.S.C. § 548,(D) RECOVERY OF PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. § 550, AND (E) UNJUST ENRICHMENT

The Plaintiff, Jeoffrey L. Burtch, Chapter 7 Trustee (the "Trustee") of and for the chapter 7 bankruptcy estate (the "Estate") of  EuCyt Laboratories, LLC ("EuCyt" or the "Debtor") in the above-referenced bankruptcy case, by and through the undersigned counsel, files this Complaint pursuant to 11 U.S.C. §§ 542, 548, and 550 and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), against Aaron Coats, Travis H. Bird, AVEM Holdings, LLC

n/k/a AVEM Healthcare, LLC, AVEM Biopharmaceuticals, LLC, AVEM Labs, LLC d/b/a AVEM Laboratories, LLC, AVEM Diagnostics, LLC, AVEM Medical, LLC f/k/a MediSource Partners, LLC, and the John Doe Entities (defined *infra*), (each a "Defendant" and collectively the "Defendants"), seeking to compel the turnover of assets and property of the Estate, for an accounting, including the EuCyt Documents (defined *infra*) being held by the Defendants to the Trustee on behalf of the Estate, and the avoidance and turnover of certain transfers, and alleges in support thereof as follows:

## JURISDICTION & VENUE

1.     This action is an adversary proceeding governed by Part VII of the Federal Rules of Bankruptcy Procedure, Rule 7001, *et seq.*

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, and this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and/or 1409(a).

4.     All conditions precedent to the filing of this action have been performed, waived, satisfied and/or have occurred.

## BACKGROUND

5.     On December 23, 2020 (the "Petition Date"), EuCyt Laboratories, LLC filed a voluntary petition for relief under Chapter 7 of Title 11 of the of the United States Code (the "Bankruptcy Code").

6.     On or about December 23, 2020, Jeoffrey L. Burtch was appointed as interim trustee of the Estate pursuant to Section 701 of the Bankruptcy Code and currently serves as the Trustee for this case pursuant to 11 U.S.C. § 702(d).

7.     The 341 Meeting of Creditors, (the "341 Meeting") was held and concluded on

January 27, 2021 [D.I. 17]. Travis H. Bird ("Bird"), CEO and Manager of EuCyt, testified on behalf of EuCyt.

## THE PARTIES

8.      The Plaintiff is Jeoffrey L. Burtch, Chapter 7 trustee of EuCyt.

### The Debtor EuCyt

9.      Based on information provided to the Trustee, on May 31, 2017, EuCyt, LLC was formed as a Delaware limited liability company. E. Taylor Robertson ("Robertson"), of the Robertson & Robertson Law Group PLLC ("Robertson PLLC") in Dallas, Texas, signed the Delaware Certificate of Formation as the "Authorized Representative" for EuCyt, LLC.

10.      Eucyt, LLC changed its name to "Eucyt Laboratories, LLC" effective July 17, 2017. Robertson signed the State of Delaware Certificate of Amendment as the "Authorized Person" on behalf of the renamed EuCyt Laboratories, LLC.

11.      Pursuant to the "Limited Liability Company Agreement EuCyt Laboratories, LLC (a Delaware Limited Liability Company)" (the "EuCyt LLC Agreement"), dated July 17, 2017:

- Bird was the Manager of EuCyt (Section 7.2);

- Bird was the CEO of EuCyt (Section 8.1);

- the Class A Member of EuCyt is EuCyt Holdings, LLC ("EuCyt Holdings"); and

- Bird signed the EuCyt LLC Agreement on behalf of EuCyt Holdings as its CEO.

12.      Upon information and belief, Bird is the sole member of EuCyt Holdings, and the beneficial owner of EuCyt.

13.      EuCyt's main business address was 5670 Wynn Road, Suite D, Las Vegas, NV 89118 (the "Leased Premises").  Bird also operated EuCyt out of the offices of MediSource Partners, LLC located at 9535 Forest Lane Dr., Suite 100A, Dallas, TX 75243.

14.    From May 2017 through the Petition Date, EuCyt was involved in the manufacture of products derived from human umbilical cord blood, human tissue or cells, including umbilical cord, exosomes and/or related products that were distributed to health care providers for "stem cell" treatments.

**Individuals**

15.    Aaron Coats ("Coats") is an individual, with a mailing address of 2300 Valley View Lane, Suite 550, Irving, TX 75062.  Coats also:

a.    is listed as the Debtor's Chief Financial Officer ("CFO") in the Debtor's Statement of Financial Affairs ("S.O.F.A.") [D.I. 14], Part 13, #28;

b.    is named as one of the "accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case", according to the S.O.F.A., Part 13, "Books, Records and Financial Statements", #26.a.1;

c.    is listed as someone in "possession of the debtor's books of account and records when this case is filed" according to the S.O.F.A., Part 13, #26.c.1;

d.    is listed as a "[n]ame and address of the person who has possession of inventory records" (the "Debtor's Inventory Records") in the S.O.F.A., Part 13, #27.1;

e.    has an additional mailing address of 5670 Wynn Road, Suite D, Las Vegas, NV 89118;

f.    was a signatory on EuCyt's main operating account, Wells Fargo Business Invoice Checking Acct. #******3031 (the "Account");[1]

g.    allegedly per the testimony of Bird at the 341 Meeting, prepared the Schedules [D.I. 13]; and

---

[1] Bird testified at the 341 Meeting that he and Aaron Coats were the signatories (the "Signatories"), that Mr. Coats worked remotely from home, but would wire transfer out of the Account.

h.     is the Chief Financial Officer of AVEM Holdings, LLC nka AVEM Healthcare, LLC, AVEM Diagnostics, LLC, AVEM Labs, LLC, AVEM Biopharmaceuticals, LLC, and AVEM Medical, LLC f/k/a MediSource Partners, LLC.

16.     Travis H. Bird is an individual with mailing addresses at: 9535 Forest Lane, Suite 100A, Lake Highlands, Dallas, TX 75243, and 1505 Federal Street, Ste 300, Dallas, TX 75201, and 5670 Wynn Road, Suite D, Las Vegas, NV 89118. Bird also:

a.     was the Manager and CEO of EuCyt;

b.     upon information and belief is the sole member of EuCyt Holdings, LLC ("EuCyt Holdings"), EuCyt Holdings is the sole member of EuCyt, Bird is an equity and beneficial owner of EuCyt;

c.     on December 23, 2020, under the penalty of perjury, signed the Debtor's Petition [D.I. 1] as Manager;

d.     on December 28, 2020, under the penalty of perjury, signed the Debtor's Amended Petition [D.I. 9] as Manager;

e.     on January 11, 2021, under the penalty of perjury, signed the Debtor's Official Form 202 and its required documents (collectively the "Schedules") [D.I. 13] as Manager; and

f.     on January 11, 2021, under the penalty of perjury, signed the Debtor's S.O.F.A. [D.I. 14].

17.     AVEM Holdings, LLC ("AVEM Holdings"):

a.     is a Delaware limited liability company, formed on August 4, 2016 under the name THB GROUP, LLC;

b.     on October 10, 2016, the name of the limited liability company was changed

to AVEM Holdings, LLC;

     c.     on January 26, 2021, the name AVEM Holdings, LLC was again changed to AVEM Healthcare, LLC;

     d.     Harvard Business Services, Inc. is the Delaware registered agent for AVEM Holdings, with a mailing address of 16192 Coastal Hwy, Lewes, DE 19958; and

     e.     Bird is the Manager, CEO, sole member, and owner of AVEM Holdings.

18.     AVEM Biopharmaceuticals, LLC ("AVEM Biopharmaceuticals"):

     a.     is a Delaware limited liability company, formed on July 10, 2020;

     b.     Harvard Business Services, Inc. is the Delaware registered agent with a mailing address of 16192 Coastal Hwy, Lewes, DE 19958;

     c.     registered as a foreign entity in Texas, with Coats serving as a Texas registered agent with a mailing address of 2300 Valley View Lanes, Suite 550, Irving, Texas 75062-5059, and

     d.     upon information and belief, Bird is a member or beneficial member and owner of AVEM Biopharmaceuticals.

19.     AVEM Labs, L.L.C. d/b/a AVEM Laboratories, LLC ("AVEM Labs"):

     a.     is a Nevada limited liability company formed on September 22, 2020;

     b.     Registered Agents Inc. is the registered agent with a mailing address at 401 Ryland St., Suite 200-A, Reno, NV 89502;

     c.     is a clinical medical laboratory, NPI 1629670997, located at the Leased Premises address of 5670 Wynn Rd., Suite D, Las Vegas, NV 89118;

     d.     Coats is the Chief Financial Officer and the authorized official contact for AVEM Labs;

e.    AVEM Holdings is the managing member with a mailing address at 401 Ryland St., Suite 200-A, Reno, NV, 89502; and

f.    upon information and belief, Bird is an equity and beneficial owner of AVEM Labs.

20.    AVEM Diagnostics, LLC ("AVEM Diagnostics):

a.    is a Delaware limited liability company formed on June 24, 2013;

b.    on January 14, 2021, AVEM Diagnostics was registered in Nevada as a Foreign Limited-Liability Company, with Delaware the domestic state of incorporation;

c.    AVEM Healthcare is the managing member of AVEM Diagnostics;

d.    Harvard Business Services, Inc. is the Delaware registered agent for AVEM Diagnostics, with a mailing address of 16192 Coastal Hwy, Lewes, DE 19958; and

e.    upon information and belief, Bird is an equity and beneficial owner of AVEM Diagnostics.

21.    AVEM Medical, LLC f/k/a MediSource Partners, LLC ("AVEM Medical" and/or "MediSource"):

a.    is a Texas limited liability company formed on April 21, 2009;

b.    on June 3, 2020, Robertson PLLC filed a name change for Medisource Partners LLC to EuCyt Medical, LLC;

c.    on June 19, 2020 Robertson PLLC filed a second name change to AVEM Medical, LLC.

d.    Bird is the manager, CEO, and sole owner of MediSource.[2]

---

[2] Bird in the Bird Affidavit (defined *infra*) asserted "I am the Manager of Avem Medical, L.L.C., which was formerly known as Medisource Partners, LLC ("MediSource")... Since its inception, I have been the Chief Executive Officer, sole Member, and sole owner of MediSource … the 100% owner of MediSource".

e.     has mailing addresses of 2300 Valley View Lane, Ste 550, Irving, TX 75062-5059, and 1505 Federal Street, Suite 300, Dallas, TX 75201, and 9535 Forest Lane, Ste 100A, Dallas, Texas 75243;

f.     Coats is the Registered Agent of MediSource with a mailing address of 2300 Valley View Lane, Ste 550, Irving, TX 75062-5059; and

g.     from 2010 through 2019 used the trading name of EuCyt Orthopedics, LLC.

22.     The John Doe Entities include any entities known or unknown that are controlled by Bird, Bird's family, or Coats, including but not limited to, any entities affiliated with the following: AVEM Holdings, AVEM Biopharmaceuticals, AVEM Labs, AVEM Diagnostics, and AVEM Medical.[3] The John Doe Entities and AVEM Holdings, AVEM Biopharmaceuticals, AVEM Labs, AVEM Diagnostics, and AVEM Medical are collectively referred to as the "Debtor Affiliated Entities".

**The Section 542 Letters**

23.     On August 25, 2021, the Trustee sent a Section 542 Letter to Coats (the "Coats 542 Letter") with a twenty (20) day response deadline.

24.     To date, Coats failed to respond to the Coats 542 Letter for production of documents in any manner, and refused to turn over, or otherwise make available for inspection and copying, any of the EuCyt Documents (defined *infra*);

25.     Coats and EuCyt have not produced to the Trustee for the EuCyt Two and a Half Year Period (defined *infra*.): EuCyt's inventory records, sales records, financial records, financial statements, list of assets, accounts payable, accounts receivable, most contracts, and the specific EuCyt assets and liabilities transferred before the Petition Date.

---

[3] The Trustee reserves the right to amend the scope of the John Doe Entities or amend the complaint upon discovery of additional parties identified as relevant to the Complaint.

26. On August 25, 2021, the Trustee sent a Section 542 Letter to Bird (the "Bird 542 Letter") with a twenty (20) day response deadline.

27. On September 20 and 21, 2021, counsel at Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt"), as counsel to AVEM Holdings and its officers, emailed Trustee's counsel regarding the Bird 542 Letter and stated Bird's production would be "by around October 11", 2021.

28. To date, Bird has not produced any documents pursuant to the Bird 542 Letter.

29. Bird and Coats knew about the Trustee's efforts to uncover non-disclosed EuCyt assets that were transferred to Bird, Coats, and/or other Bird entities, and the Trustee's potential avoidance litigation to recover those assets.

30. The Bird 542 Letter and Coats 542 Letter requested documentation and information identifying and listing the specific assets transferred (and their value) and all documentation identifying the specific liabilities transferred from EuCyt to AVEM Holdings in the August 1, 2020 Distribution and Contribution Agreement of EuCyt Laboratories, LLC (discussed *infra*).

31. In connection therewith, Coats and Bird have within their possession, custody, or control[4]:

    a. documents and records of the Debtor from May 31, 2017 through the Petition Date (the "EuCyt Two and a Half Year Period"), including but not limited to: inventory records, sales records; EuCyt invoices to clients; purchase orders; shipping records; payment records; accounts receivable; accounts payable; invoices of EuCyt purchases from vendors; contracts; letters to Korea Heavy Industry and Development Co. Ltd. ("KHIND"), letters to the Food and Drug Administration

---

[4] Collectively documents and records referred to in subparagraphs (a) through (c) of this paragraph are referred to as the "EuCyt Documents").

(the "FDA"); and CITI credit card invoices and receipts.

b.     documents and records of the Debtor for the EuCyt Two and a Half Year Period related to assets transferred or products shipped to various entities, including but not limited to clients, individuals, and or entities: Bird; Denise Bird; Coats; AVEM Holdings; AVEM Labs; AVEM Diagnostics; AVEM Medical; Pantheon; Generex Biotechnology Corp. ("Generex"); NuGenerex Distribution Solutions, LLC ("NuGenerex"); Olaregen Therapeutix, Inc. ("Olaregen"); Regenerative Medicine and Anti-Aging Institutes of Omaha, LLC; Stem Cell Centers, LLC; and Regenerative Medical Supply LLC.[5]

c.     certain documents and electronically stored information including, but not limited to:

- all EuCyt emails and email addresses on EuCyt email servers, phones, and computers;

- the FDA Restricted Products[6];

- the Regenerative Notification;

- the AVEM Holdings/EuCyt Intellectual Property Agreement;

- the FDA First Inspection Notification;

- the 2019 Bird Dividend;

- the February-July 2020 Asset Transfers;

- the Products;

- the April 13, 2020 Inventory;

- the documents within the EuCyt File Cabinets;

---

[5] Regenerative Medicine and Anti-Aging Institutes of Omaha, LLC, Stem Cell Centers, LLC and Regenerative Medical Supply LLC are collectively "Regenerative".

[6] All capitalized terms in this sub-paragraph not previously defined are defined below.

- the Specific Assets and Assumed Liabilities in the Distribution and Contribution Agreement;

- documentation of the Alleged $150,000 Regenerative Shipment;

- the Disputed AR Invoices;

- the EuCyt 2019–2020 Sales and Shipments to MediSource, and MediSource payments to EuCyt;

- the 2019-2020 income payments to EuCyt that were shared or split with Medisource/Avem Medical, the "Alleged Diversion Payments";

- the KHIND Letter of Intent;

- the KHIND Investment Agreement;

- the FDA COVIXO IND 20582;

- the November 5, 2020 FDA approval for COVIXO;

- the final executed EuCyt copy of the COVIXO IND November 2020 Transfer Letters to AVEM Holdings filed with the FDA;

- the executed Summary Protocol Report filed with the FDA;

- the final executed Amended COVIXO IND 020582 Application filed with the FDA

- the Coats $74,010.00 Transfers;

- the AVEM Labs $48,000.00 Transfers;

- the $198,064.81 New Lab Costs;

- the $58,834.30 Paid Rent; and/or

- documents and records created for the benefit of or at the direction of EuCyt

## EUCYT'S HISTORY AND E. COLI POSIONINGS

32.     EuCyt produced an exosome product known as XO-500 ("XO-500").

33.     On or about October 28, 2019, Regenerative purchased from EuCyt vials of XO-500 [7].

34.     On October 28, 2019, EuCyt shipped via FedEx to Regenerative in Omaha, Nebraska, "15 vials of umbilical cord Blood XOsomes batch number W433119144EB1."[8]

35.     On October 30, 2019, in Omaha, Nebraska, Regenerative administered the XO-500 for treatment for two husband and wife couples, Katherine Steinkraus and David Streinkraus, and T. Waldman-Williams and Merrill Williams.

36.     Subsequent to their XO-500 treatments, the Steinkrauses and Williamses all fell victim to Escherichia coli ("E. coli") bacteria poisoning (the "E. coli Poisoning").[9]

37.     On March 31, 2020, T. Waldman-Williams and Merrill Williams filed suit against Regenerative.[10]

38.     On August 31, 2020, Regenerative filed a Third-Party Complaint against EuCyt in the Williams Lawsuit (the "Third Party Complaint").

39.     On October 30, 2020, Katherine Steinkraus and David Steinkraus filed suit against Regenerative.[11]

---

[7] *Regenerative Medical Supply LLC v. Eucyt Laboratories, LLC*, Case No. A-20-825391-C, filed November 24, 2020, District Court, Clark County, NV (the "Regenerative Lawsuit"), ¶¶ 11, 70 and 82.

[8] The Barcode # is W433119144EB1, Lot# DT005285.

[9] Regenerative Lawsuit, ¶¶ 12, 13, 71, and 72; *see also* Regenerative, Claim 8, Part 4, Desc Attachment 3, page 1, Travis Autor Letter.

[10] *T. Waldman-Williams and Merrill Williams v. Regenerative Medicine and Anti-Aging Institutes of Omaha, LLC and Stem Cell Centers, LLC*, Case No. CI D59C1200000503, filed March 31, 2020, District Court of Sarpy County, Nebraska (the "Williams Lawsuit"). Stem Cell Centers, LLC is the sole member of Regenerative.

[11] *Katherine Steinkraus and David Steinkraus v. Regenerative Medicine and Anti-Aging Institutes of Omaha, LLC, Stem Cell Centers of Alaska, LLC, Travis Autor f/k/a Travis Broughton, Emily Autor,*

40.     On November 24, 2020, Regenerative filed a separate lawsuit[12] against EuCyt[13].

**The FDA Inspections and the FDA Warning Letter**

41.     As a result of the E. coli Poisoning, the Office of Biological Products Operations – Division II of the FDA, conducted inspections of EuCyt's laboratory. These inspections occurred on November 12 through 21, 2019 and February 19 and 20, 2020 (collectively the "FDA Inspections").

42.     Subsequent to the FDA Inspections, the FDA issued its FDA Warning Letter[14] to EuCyt, detailing significant deviations from current good manufacturing practice,[15] and 13 major violations, including "152 sterility failures"[16].

43.     The FDA Warning Letter indicated that EuCyt had a "sterility failure for E. coli", but failed to test other "lots" manufactured the same day, and the result was one of the "other lots" was shipped to Regenerative and associated with the E. coli Poisoning:

> In one instance, your firm failed to thoroughly investigate the failure of a lot (Lot # (b)(4), Donor ID #(b)(6)) to meet specifications after a sterility failure for E. coli. The firm discarded the lot without conducting a thorough

---

*Catherine Miller, and Melanie Dresden*, Case No. D01C1200008807, filed October 30, 2020, District Court of Douglas County, Nebraska (the "Steinkraus Lawsuit").

[12] *Regenerative Medical Supply LLC v. Eucyt Laboratories, LLC*, Case No. A-20-825391-C, filed November 24, 2020, District Court, Clark County, NV (the "Regenerative Lawsuit").

[13] Collectively the "Lawsuits" are the "Steinkraus Lawsuit", the "Williams Lawsuit", the "Third Party Complaint" and the "Regenerative Lawsuit".

[14] *See* the Office of Biological Products Operations - Division II, United States, Part of the FDA, FDA WARNING LETTER, #OBPO 20-603498, Office of Biological Products Operations to EUCYT Laboratories LLC, MARCS-CMS 607182 — JUNE 04, 2020 Letter, *www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/eucyt-laboratories-llc-607182-06042020,* (the "FDA Warning Letter", a copy of which is attached hereto as Exhibit 1).

[15] *See* Exhibit 1: "EuCyt's manufacture of products derived from human umbilical cord blood and umbilical cord … all for allogeneic use." "FDA investigators documented evidence of significant deviations from current good manufacturing practice (CGMP) and current good tissue practice (CGTP)…"

[16] "…from April 2018 to November 2019, your firm failed to thoroughly investigate 152 sterility failures…. (i). The contaminating organism(s) were identified, but your firm destroyed these batches without conducting thorough investigations." *See* Exhibit 1, FDA Warning Letter, 9 and 9(i), pg. 6 of 10.

investigation that extended to <u>other lots manufactured the same day</u> ((b)(4)(b)(6)). Another lot <u>manufactured that day</u> (Lot #(b)(4), Donor ID #(b)(6)) was later associated with a report of a patient testing positive for E. coli.

*See* <u>Exhibit 1</u>, p. 6 of 10 (emphasis supplied).

44.    The EuCyt products that the FDA Warning Letter restricted included: human umbilical cord blood products, umbilical cord products, VidaCord™ an umbilical cord derived product, VidaGel™ (Wharton's jelly) an exosome and umbilical cord derived product, VidaStem™ an umbilical cord product; VidaFlo™ an amniotic fluid derived product, exosome products: Xosomes™ and COVIXO (formerly known as XOCYT™), and HCT/Ps (human cells, tissues, or cellular or tissue-based products) (the "FDA Restricted Products"). The FDA labeled these FDA Restricted Products as "drugs"[17] subject to additional regulation. The FDA asserted these drugs needed an approved "investigational new drug application (IND)", and the FDA asserted in the Warning Letter that none of the FDA Restricted Products had an approved IND.

45.    EuCyt informally appealed the findings in the FDA Warning Letter. On July 8, 2020, the FDA rejected EuCyt's informal appeal asserting otherwise.[18]

46.    Coats and Bird have not produced any documents to the Trustee regarding the FDA Inspections or the FDA Restricted Products.[19]

---

[17] "Therefore, these products are drugs as defined in section 201(g) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) [21 U.S.C. 321(g)] and biological products as defined in section 351(i) of the Public Health Service Act (PHS Act) [42 U.S.C. 262(i)]."

[18] On July 8, 2020, the FDA in an email to Elliott Sauter rejected EuCyt's June 16, 2020 informal email appeal of the June 4, 2020 Warning Letter, the FDA reaffirmed that "None of your products are the subject of an approved biologics license application (BLA), nor is there an IND in effect for any of them," meaning the FDA restrictions still applied.

[19] On February 18, 2022, the law firm of Elliott Sauter PLLC did produce some documents in response to the Trustee's September 7, 2021 Section 542 Letter.

**EuCyt's Plunge Into Insolvency**

47.     As a result of the E. coli Poisoning, EuCyt's finances were severely distressed and EuCyt plunged into insolvency.

48.     For example, from January 1, 2019 to December 31, 2019, EuCyt's gross revenue was $2,293,574.86. S.O.F.A. [D.I. 14].

49.     Bird's 2019 Schedule C tax return detailed EuCyt in 2019 had Gross Receipts or Sales of $2,043,118.[20]

50.     Regenerative's exclusive purchases from EuCyt from May 1, 2019 to December 31, 2019 totaled $2,027,309.73. This leaves only $266,265.13 in EuCyt sales from Regenerative and all non-Regenerative clients from January 1, 2019 to April 30, 2019 and for all non-Regenerative clients from May 1, 2019 to December 2019.[21] [22]

51.     Upon information and belief, EuCyt's partial documents of 2019, including the 2019 General Ledger that has been withheld, should indicate EuCyt's Net Sales and gross income may far exceed the reported gross sales for 2019 on the S.O.F.A. and in the Schedule C to Byrd's 2019 tax return, evidencing a sharing or splitting of EuCyt 2019 income payments with MediSource or the Byrd entities.

---

[20] *See* <u>Exhibit 24</u>, Schedule C to 2019 Bird tax return ($2,043,118 is $250,456.86 less than the declared 2019 gross revenue of $2,293,574.86 for EuCyt per the S.O.F.A).

[21] Between January 1, 2019 and April 30, 2019:
- Regenerative placed 46 orders for 440 vials of product for $168,875.00, based on known contract price to Regenerative.
- MediSource placed 6 orders for 114 vials, for $56,250.00 (108 vials of AF-100 at MediSource Contract price of $500 per vial, the 6 vials of EUL-200 are estimated at the lowest possible price to any vendor at $325.00 per vial).
- Also 15 other vendors placed 72 orders for 175 various vials, at unknown prices, estimates for gross sales range from $118,000 to $175,000.

[22] In the Florida Action (defined *infra*), Bird alleged Generex paid MediSource and himself in 2019-2020, at least in part for EuCyt product sales, $1,441,366.00, with a $337,511.61 "Earn-Out Bonus" still due to MediSource.

52.     From January 1, 2020 to December 31, 2020, EuCyt's gross revenue was $514,150.95, [S.O.F.A. [D.I. 14]], and EuCyt was surviving on loans.  Upon information and belief, in 2020, Regenerative, EuCyt's major client in 2019, only purchased $118,947.22 of EuCyt's products.

53.     Upon information and belief, Regenerative's purchases accounted for approximately 90% of EuCyt's 2019 sales: Regenerative in September 2019 purchased $444,759.00 and in October purchased $315,974.00 of EuCyt's products.  After the E. coli Poisoning, Regenerative's November 2019 purchases of EuCyt products fell to $29,167.78 and December 2019 purchases fell to $64,073.38, a nearly 88% drop.[23]

54.     According to the Schedules, EuCyt had liabilities of $535,382.04, unsecured claims of $279,442.50, and unknown liabilities of the potential damages of the Lawsuits, with the Regenerative Lawsuit alleging minimum damages of $300,000.

55.     Schedule C to Bird's 2019 tax return detailed EuCyt in 2019 had a "Net Loss for 2019: -2,503,305."[24]

56.     EuCyt was insolvent from October 30, 2019 through the Petition Date, without the majority of its former sales to Regenerative, and existing on loans.  Coats and Bird have not produced the vast majority of EuCyt's financial documents during the EuCyt Two and a Half Year Period to the Trustee.

---

[23] Regenerative's purchases of $760,733 in September and October 2019, then down to $93,241.16 for November and December 2019, is a drop of $667,491.84 in purchases in the last two months of 2019.

[24] *See* Exhibit 24, "Per Code 1.471-2(c) Unusable inventory written off at bona-fide selling prices. 2,932,460."

## The $500,000 Dividend to Travis H. Bird

57.     By October 31, 2019, Mr. Autor of Regenerative had telephoned Bird notifying him of the E. coli Poisoning (the "Regenerative Notification").[25]

58.     On November 4, 2019, the Center for Disease Control ("CDC") contacted EuCyt and the CDC's investigation began (the "CDC Investigation").

59.     On November 8, 2019, Bird was on a telephone conference call (the "FDA Call") with the FDA, Mr. Autor of Regenerative, Dr. Maureen Tierney, MD ("Dr. Tierney"), of the State of Nebraska Department of Health and Human Services, the Nebraska Epidemiology Group, and HAI team regarding the E. coli Poisoning, and the FDA notified EuCyt of the first FDA inspection on November 12, 2019 (the "FDA First Inspection Notification"). *See* <u>Exhibit 2</u> (Email from Dr. Tierney regarding conference call).

60.     On November 8, 2019, Robertson of Robertson PPLC advised Bird that Elliott Sauter PLLC ("Elliott Sauter"), a law firm located in Dallas, Texas, could help with the CDC/FDA investigation and with "being prepared for the potential lawsuits" from the E. coli Poisoning. *See* <u>Exhibit 3</u> (Email from Robertson regarding potential products liability litigation.)

61.     November 8, 2019, Coats signed the Elliott Sauter engagement letter on behalf of EuCyt for preparing for the potential lawsuits and response to the FDA. *See* <u>Exhibit 4</u>.

62.     On Friday November 8, 2019, notwithstanding the Regenerative Notification, the CDC Investigation, the FDA Call, the FDA First Inspection Notification, the potential E. Coli Poisoning lawsuits, and the now terminal state of EuCyt as an operating business, Bird caused

---

[25] The FDA stated: "[f]or example, on October 31, 2019 at 0900 the EuCyt CEO received a phone call from a customer regarding a couple with an adverse reaction (Donor ID #DT005285, Lot #43119144EB1). Per the Non-Conformance Form dated 11/9/2019, "the patient tested positive for E.coli"." EuCyt's December 10, 2019 Response Letter to the FDA, p. 22 of 32.

EuCyt to make an online transfer in the amount of $500,000.00[26], to Bird for a "Dividend Yearly" (the "2019 Bird Dividend"). *See* <u>Exhibit 5</u> (Wells Fargo Business Bank Statement, Nov. 30, 2019.)

63.    The 2019 Bird Dividend was initiated to defraud the creditors of EuCyt in the face of disappearing revenue, a terminal business, and ballooning litigation expenses.

64.    In addition to the various regulatory issues threatening the EuCyt enterprise, Bird was well aware of the enterprise-fatal problems of EuCyt's products.

65.    EuCyt received October 2, 2019 and October 24, 2019 independent lab results indicating EuCyt's XO-500 products had tested E. coli positive. On November 8, 2019, EuCyt sent the suspicious alleged E. Coli "other lot" vial to a different third-party lab for a "14 days sterility" testing. That vial also tested positive for E. coli.

66.    Bird was therefore at the time of the 2019 Bird Dividend aware of 1) EuCyt's E. coli "sterility failure" before October 30, 2019; 2) the E. coli Poisoning; 3) the upcoming FDA inspection; 4) and the "great financial strain" to EuCyt's business all of this would entail.

67.    Notwithstanding all of the above, Bird paid himself the 2019 Bird Dividend while EuCyt still had financial resources before EuCyt's financial collapse. Bird did so with actual intent to divert money to himself and to hinder, delay, and defraud creditors of EuCyt, including but not limited to Regenerative and the victims of the E. Coli Poisonings.

68.    The 2019 Bird Dividend transferred the majority of EuCyt's cash assets to Bird: the Account's ending balance as of October 31, 2019 was $640,089.25 (*see* <u>Exhibit 5</u>) and as of September 30, 2019 was $516,854.71.  After the 2019 Bird Dividend, EuCyt's Account's ending balance as of November 8, 2019 was $75,024.41 and as of November 30, 2019 was $71,409.53.

---

[26] Wells Fargo Business Invoice Checking Acct. #******3031, Nov. 30, 2019 Bank Statement: 11/08/2019, $500,000.00, "Online Transfer to Bird T Ref #1b074Zx183 Portfolio Checking Dividend Yearly".

*See* Exhibit 5. The Account's ending balance as of December 31, 2019 was $19,086.90. *See* Exhibit 6 (Wells Fargo Business Bank Statement, December 31, 2019.) The 2019 Bird Dividend took EuCyt down to its last farthing leaving unreasonably small capital to run its business, especially in light of known and mounting liabilities.

69.    In addition to removing the majority of EuCyt's cash, EuCyt received less than a reasonably equivalent value in exchange for the 2019 Bird Dividend. In fact, EuCyt received no value in exchange for the 2019 Bird Dividend.

70.    Bird did not disclose the 2019 Bird Dividend in any manner to the Trustee, and the Trustee only discovered the transfer after Wells Fargo produced the Account's 2019 bank statements to the Trustee on or about September 30, 2021.

71.    Coats and Bird have not produced any documents to the Trustee, including, but not limited to, emails or phone records regarding the 2019 Financial Statements, the Regenerative Notification, the FDA First Inspection Notification, and/or the 2019 Bird Dividend.

**The Investigative Prohibitions Against EuCyt**

72.    On Monday, November 11, 2019, Dr. Tierney at the State of Nebraska Department of Health and Human Services emailed Bird, copying the FDA and the CDC, stating: "I just want to make sure that we have the same understanding. We feel that all products from your lab derived from umbilical cord blood should be on hold until we figure this out not just the exosome."

73.    By November 11, 2019, the State of Nebraska had placed a formal hold on EuCyt shipping any umbilical cord blood or exosome products to the state.

74.    On November 22, 2019, Elliot Sauter, as counsel for EuCyt, responded via email to Dr. Tierney stating: EuCyt only ships three products to Nebraska: "Wharton's Jelly, Exosomes Blood, Umbilical Cord Blood."

75.     On December 3, 2019, Elliott Sauter replied to Dr. Tierney that "Eucyt is currently not shipping to Nebraska per your request", and, on December 10, 2019, stated to Dr. Tierney: "EUCYT is complying with your request that they not ship to Nebraska."

76.     On December 13, 2019, Dr. Tierney emailed Elliott Sauter "[t]o begin/restart shipping a drug into the state of Nebraska, the company will need to make sure that they hold the proper licenses to distribute or sell drugs (as defined in Neb. Rev. Statute §38-2819) into Nebraska."

77.     EuCyt never obtained the proper licenses to distribute or sell drugs into Nebraska.

**EuCyt's Representations to the FDA and EuCyt's Further Acts**

78.     The FDA Warning Letter provides:

> At the time of the February 2020 investigation, you stated that **you had not shipped or destroyed any finished product** since the conclusion of the November 2019 inspection. Further, you represented to FDA that, as of February 20, 2020, **no product had been distributed** from EUCYT since November 21, 2019.
>
> During the February 2020 investigation, you also stated that in January 2020, you had processed umbilical cord into both **Wharton's jelly** and exosome products that had resulted in (b)(4) vials of **Xosomes**™ and **VidaGel**™; you further stated that these finished products were in **quarantine**. As of February 4, 2020, you represented to FDA that your firm is not conducting **any manufacturing operations including processing, labeling, storing or shipping**.

*See* Exhibit 1, FDA Warning Letter, pp. 7 – 8 (emphasis supplied).

79.     Therefore, EuCyt had inventory of FDA Restricted Products that it could not liquidate. EuCyt later asserted to the FDA that no product had been shipped or distributed since November 21, 2019, nor was EuCyt "conducting any manufacturing operations including processing, labeling, storing, shipping". *Id.*

80.     On December 10, 2019, Elliott Sauter drafted on behalf of EuCyt a response letter to the FDA regarding the November FDA Inspections,[27] in part stating "EUCYT will no longer be manufacturing XOsomes (Cord Blood). EUCYT has made the choice to discontinue the processing of all umbilical cord blood sourced products, including XOsomes (Cord Blood)."[28]

81.     Between March and November 2020, Elliot Sauder also handled EuCyt's response to the CDC Investigation, and handled parts of EuCyt's COVIXO FDA IND Application for a Clinical Trial (described further below.)

82.     On December 10, 2019, General Counsel from the Nevada State Board of Pharmacy sent a letter to EuCyt questioning EuCyt's products, including exosomes.

83.     On January 21, 2020, the Nevada State Board of Pharmacy requested "confirmation as to whether Eucyt Laboratories is currently producing products containing exosomes in the State of Nevada and/or furnishing such production to patients?"

84.     On February 4, 2020, the General Counsel of the Nevada State Board of Pharmacy wrote to EuCyt:

> This will confirm our teleconference today following the site visit by Board staff in which staff requested confirmation in writing that Eucyt Laboratories will waste all recovered and/or compounded sterile products in its possession and will cease the recovery, compounding and/or production of sterile products until Eucyt Laboratories is complaint with minimum sterile compounding and processing standards.

85.     On February 5, 2020, Elliott Sauter responded on behalf of EuCyt to the General Counsel of the Nevada State Board of Pharmacy:

> I can confirm that Eucyt will waste all recovered and/or compounded sterile products in its possession and will cease the

---

[27] Hereinafter referred to as the "Final FDA 483 Response".

[28] Later on July 11, 2020 sent EuCyt's response to the FDA Warning Letter (the "Response Letter to the FDA") (collectively the Final FDA 483 Response and the Response Letter to the FDA are the "EuCyt FDA Responses").

recovery, compounding and/or production of sterile products until they are complaint with minimum sterile compounding and processing standards.

**EuCyt's Questionable Compliance with the Investigative Restrictions**

86.     EuCyt's assertions to the State of Nebraska, the Nevada State Board, and to the FDA that EuCyt had stopped "processing, labeling, storing or shipping" exosomes, umbilical cord blood sourced products, including XOsomes from November 21, 2019, were false.

87.     The following events of EuCyt contracting, selling, and shipping allegedly FDA Restricted Products from November 2019 through August 2020, indicate Bird and/or EuCyt was less than forthright to the FDA and the state health boards:

**Total Sports Medicine**

88.     Travis Bird in a November 19, 2019 email to a Nevada company: "To: Roddy McGee drmcgee@totalsportsmedicine.com, Taylor Robertson" "Subject: Contract send over for Wharton's jelly" (an FDA Restricted Product). Dr. McGee of Nevada's Total Sports Medicine in January 2020 placed five (5) separate orders and paid EuCyt $7,416.00.

**Regenerative**

89.     The E. coli Poisoning issue led to the FDA Inspections of EuCyt's laboratory starting on November 12th through the 21st, 2019. The publicity regarding Regenerative's patients receiving E. coli Poisoning allegedly destroyed the bulk of Regenerative's business.[29]

90.     In December 2019 (after the November 2019 FDA Inspections), Bird called Regenerative's Autor and said EuCyt was expanding their laboratory and needed to move product during the expansion.

91.     Bird expressed to Autor a desire to ship product to Regenerative.

---

[29] Regenerative, Claim 8, Part 4, Desc Attachment 3, page 1, Travis Autor Letter.

92.    Upon information and belief, Autor refused and did not order the product.

93.    In addition to refusing to order product, Autor told Bird that EuCyt and Bird owed Regenerative money because the tainted E. coli product caused the collapse of Regenerative's business.

94.    Upon information and belief, in December 2019 Bird proceeded to send (without authorization), approximately $150,000 worth of FDA Restricted Product, including the exosomes product Wharton's Jelly[30], to five (5) Regenerative offices, at least one **in Nebraska[31]**.

### Shipping Under Medisource Labels

95.    Upon information and belief, in order to conceal these illicit shipments to Regenerative, Bird used a Medisource label (as opposed to EuCyt labeling) in Texas to ship the product, simply placing the Medisource label over the EuCyt label (the "$150,000 Regenerative Shipment").

96.    However, Bird had EuCyt bill Regenerative $150,000 (the "Disputed AR Invoices") for the $150,000 Regenerative Shipment, which Regenerative did not pay.

97.    By January 31, 2020, EuCyt started charging Regenerative a high monthly interest, totaling $19,925.20 for January for the five accounts, growing into a $605,000 account receivable by the Petition Date.[32]

---

[30] Allegedly for two of the vials shipped, their product labels indicate:
       "W4331 18 0001AF  MSC Amnio TIC Membrane Product S3616V00, June 2021"
       "W4331 20 020EJ1  WJ-EXOSOMES Product S5007V00 Exp 26 Jan 2022".

[31] This despite EuCyt's December 10, 2019 assurance to the State of Nebraska that EuCyt was not shipping to Nebraska.

[32] Schedule, D.I. 13, Part 3: Accounts receivable, 11b. Over 90 days old: 605,523.67.

**Payment for FDA Restricted Product**

98.     In December 2019, Regenerative did pay EuCyt $64,073.38 for product on Net 14 terms, not part of the Disputed AR Invoices, of which $8,878.10 was for the Omaha, Nebraska clinic.

99.     Despite the Disputed AR invoices, Regenerative, from January through March 2020, placed approximately twenty-two (22) orders with EuCyt for VidaGel-Wharton's Jelly and Xocyt–Exosomes and made approximately ten (10) payments totaling $214,377.22 for twenty-five (25) invoices (for the FDA Restricted Products).

**Shipping Product through Medisource**

100.    Bird has asserted that he is the CEO, the "sole Member, and sole owner" of Medisource.

101.    In 2019, EuCyt and Medisource entered into an Independent Sales Representative Agreement effective as of January 1, 2019, and thereafter a second Independent Sales Representative Agreement effective as of January 1, 2020.

102.    In a February 7, 2020 email to Taylor Robertson (copying Julio Alaniz of MediSource) with a subject of "Contract for Wholesale Distribution", Bird wrote "Hi Taylor, I wanted to follow up to finalize our contract for shipping through Medisource…".

103.    AVEM Medical (f/k/a MediSource) from January 2020 through August 2020 purchased from EuCyt: AF-100 VidaFlow - Amniotic Suspension Fluid, VidaGel - Wharton's Jelly, Xocyt-Exosomes, and EuFixx Amniotic Dual Layer Patch [FDA Restricted Products], with approximately eighteen (18) invoices for $24,960.00, with seventeen (17) payments totaling $38,158.88. MediSource had twenty-seven (27) "Distributor" Shipments with total shipping costs of $21,359.25.

**Bird Potentially Diverted Debtor Revenue through MediSource**

104.    Upon information and belief, MediSource and Bird purchased EuCyt Products at undisclosed discount prices, sold and shipped EuCyt Products to various customers, directing the retail profits to Bird and entities under his control, allegedly thereby diverting EuCyt income and profits.

105.    In 2019 and 2020 EuCyt was selling and shipping EuCyt's Products, ("biologics, including umbilical cord blood and Wharton's Jelly (rich sources of stem cells), mesenchymal stem cells, and human placental derived tissue factors, primarily exosomes") to MediSource, then MediSource sold EuCyt products to Generex and NuGenerex, and/or to other customers (the "EuCyt 2019–2020 Sales and Shipments to MediSource").

106.    On August 1, 2019, Generex, through its wholly-owned subsidiary NuGenerex, closed on Asset Purchase Agreements (the "APAs") for the purchase of substantially all the operating assets of MediSource and Pantheon, with a consulting Agreement for Travis H. Bird, partially for commissions on net sales.

107.    Generex publicly stated: "MediSource Partners will distribute a line of regenerative medicine products under **development by an affiliated organization** licensed for the production of biologics, including umbilical cord blood and Wharton's Jelly (rich sources of stem cells), mesenchymal stem cells, and human placental derived tissue factors, primarily exosomes." [Emphasis supplied].

108.    EuCyt is an "affiliated organization [of MediSource] licensed for the production of biologics."

109.    MediSource only had from August 1, 2019 to November 12, 2019 to ship EuCyt products before EuCyt's shipping was shut down by the FDA.

110.    However, Bird did not terminate his Consulting Agreement until July 20, 2020 and MediSource purchases from EuCyt continued from January 2020 through August 2020.

111.    On September 23, 2020, Bird sued Generex and NuGenerex in Florida[33] for breach of contract for failure to pay MediSource and Bird what was owed under the APA's and related contracts.[34]

112.    In the Florida Action, Bird alleged Generex paid MediSource and himself, at least in part for EuCyt product sales, $1,441,366.00.

113.    On April 5, 2022, in the Florida Action, Bird and MediSource were granted Final Judgment After Default. MediSource was awarded a total judgment amount of $2,050,969.56, and Bird was awarded a total judgment amount of $2,012,399.09.

114.    Coats and Bird have not produced to the Trustee any documents related to the EuCyt 2019–2020 Sales and Shipments to MediSource, or EuCyt's 2019 or 2020 Financial Statements, or the 2019 General Ledger, or 2019 or 2020 invoices, purchase records, or shipping documents.

115.    This concealment of EuCyt 2019 and 2020 records hides the less-than-arm's-length insider product transfers to Bird allegedly transferring EuCyt assets, products, and profits to MediSource and himself, by purchasing EuCyt products at a discount price and selling the EuCyt

---

[33] *AVEM Medical, LLC, formerly known as Medisource Partners, LLC and Pantheon Medical – Foot & Ankle, LLC v. Generex Biotechnology Corporation and NuGenerex Distribution Solutions, LLC*, Case No. CACE20015691, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Civil Division, filed September 23, 2020 (the "Florida Action").

[34] Bird claimed Generex paid MediSource, $688,000, but still owes MediSource $312,000 plus an "Earn-Out Bonus" of $337,511.61, Bird demanded the stock owed to MediScource ("should be issued to me (as the 100% owner of MediSource)…). Bird's Affidavit ¶40, (the "Bird Affidavit") to Motion for Summary Judgment, in the Florida Action.

Bird, in part, was to be paid a 10% to 15% commission on MediSource sales, allegedly of EuCyt products. Partially related to MediSource Sales, Bird claims he earned approximately $1,404,915.00 but was only compensated $773,366.00, still being owed $631,549.00. The Florida Action, Amended Complaint, ¶33.

products for much higher prices.

<b>Additional Sales of Restricted Products</b>

116.    Upon information and belief, on January 7, 2020, EuCyt and Sherry Spradling, CEO/President of Birth Tissue Donor Services of TN ("Birth Tissue Donor Services"), executed a contract for EuCyt to buy cord blood and birth tissue for EuCyt's processing of new products.

117.    This despite the FDA Warning Letter stating "[a]s of February 4, 2020, you represented to FDA that your firm is not conducting any manufacturing operations including processing…"

118.    Starting with a February 27, 2020 check for $20,125.00, EuCyt paid Birth Tissue Donor Services twenty-two (22) checks, totaling $51,376.36, to buy cord blood and birth tissue for EuCyt's processing of new products.

119.    In January, February, and July of 2020, Robert M. Howington of Southwest Anesthesia & Joint Pain Management, Pllc, placed five (5) separate orders for EJ-100 and EJ-200 Xocyt-Exosomes [an FDA Restricted Product] from EuCyt and paid EuCyt $17,189.42.

120.    On January 28, 2020, The Incredible Hulls, LLC dba Restoration paid EuCyt $10,363.14.

121.    Renovare Regenerative Medicine placed one order in February 2020 and paid EuCyt $1,598.00.

122.    On February 25, 2020, Coats in an email to Robertson and Bird, regarding a "Exclusive Customer Contract" for NKD Skin Green Valley of Henderson, Nevada, wrote "Good morning Taylor, Please produce an exclusive contract for Rachel Meyer. She will be purchasing our EJ-100 product. Chart: EJ-100-Xocyt-Exosomes, 1cc Vial $800".  This product is an FDA Restricted Product.

123.    On February 26, 2020, Rachel Meyer & NkdSkin and Bird for EuCyt executed the Product Sales Agreement for 1cc vials of EJ-100 Xocyt – Exosomes for $800.00.  On February 28, 2020, NKD Skin ordered $1,600.00 of EJ-100 Xocyt and paid EuCyt $1,638.00.

124.    CellSpark Regenerative Centers, of Henderson, Nevada, ordered forty-seven (47) invoices from January 10, 2020 through July 27, 2020, making thirty-two (32) payments totaling $142,972.56 to EuCyt for the products of EJ-100 - Xocyt-Exosomes, EJ-100X - Exocyt Exosomes, WJ-100 - VidaGel - Wharton's Jelly, and WJ-200 - VidaGel - Wharton's Jelly, all FDA Restricted Products.

125.    In May and July of 2020, Cellspark representatives representing Elite NP Group, LLC of Nevada negotiated an Independent Sales Representative Agreement stating "Supplier [EuCyt] manufactures, produces and/or has available for sale and distribution, the medical related products set forth on Exhibit A hereto ("Products")".

126.    On July 3, 2020, Bird emailed Robertson and Dr. Alex Spinoso of Cellspark, regarding Elite, stating: "Hey Taylor Alex has some distributorship ready to sign up for shipments of products. When will we be able to ship get the contract done?"

127.    On July 14, 2020, Bird forwarded to Robertson an email from Elite, Brent Messer, and Alex Spinoso, with a subject of "I am sharing 'Independent Sales Rep Agreement - Eucyt Labs (Elite NP Group, LLC)" which stated: "Hello Taylor, we've made a few changes to the contract please see lined out statements and wording in red. Also please note Elite NP Group, LLC will be a Buying group/GPO…"

128.    Elite was interested in VidaStem, VidaGel - Wharton's Jelly and Xocyt-Exosomes.

129.    On June 10, 2020, NutraCyte Products, Inc. placed one order for EJ-100 Xocyt Exosomes and paid EuCyt $549.96.

130.    The Texas Institute of Orthopedic Surgery & Sports Medicine ("TiOs Orthopedics") placed two orders in July 2020 for EJ-100 Xocyt Exosomes and paid EuCyt $800.00.

131.    Through August of 2020 "there … [were] currently no FDA-approved exosome products."[35]

132.    The above-cited twelve (12) events of EuCyt contracting, selling and shipping allegedly FDA Restricted Products (the "12 Selling Events"), despite the FDA's prohibition (and/or Nebraska or Nevada's prohibitions), evidence Bird's alleged illicit pattern of doing business.

### Travis H. Bird and EuCyt's Transfer of EuCyt's Assets to Other Entities

133.    Upon information and belief, EuCyt before and after the FDA Warning Letter began closing down operations and transferring EuCyt assets to other entities controlled by Bird.

134.    At the 341 Meeting of Creditors, Bird did not fully disclose to the Trustee the specific EuCyt assets transferred pursuant to the Distribution and Contribution Agreement, their value, or to whom (*i.e* the Debtor Affiliated Entities). Instead, Bird simply testified EuCyt started transferring assets in February 2020 (the "February–July 2020 Asset Transfers").

135.    Bird also testified at the 341 Meeting that on May 3, 2020 they discussed the closure of EuCyt, that EuCyt quit doing business in early-mid 2020, and that EuCyt decided in May and June 2020 to close its doors.

136.    Coats and Bird failed to produce any documents or information regarding the February–July 2020 Asset Transfers and thereafter.

---

[35] Public Safety Notification on Exosome Products," https://www.fda.gov/vaccines-blood-biologics/safety-availability-biologics/public-safety-notification-exosome-products.

**EuCyt Trademark Applications**

137.    On March 24, 2020, EuCyt's trademark applications for OSTEOGEL[36] (Viable

Cellular Bone Allograft) and PLEXOCYT[37] were approved and registered.

138.    On March 31, 2020, EuCyt's trademark applications for EUFILL[38] (Micronized

Allograft Placental Matrix), EUFIXX[39] (Amniotic Patch), EUGEEL[40], VIDACORD[41] (Umbilical

Cord Tissue Dehydrated Patch, Excellix Cryo), and VIDASTEM[42] (Viable Umbilical Cord Blood)

were approved and registered (collectively, the "Seven Approved Trademarks").

139.    EuCyt also applied for trademark applications that were later abandoned, and

EuCyt decided not to apply for trademark applications for many of the following products EuCyt

was selling between 2018 and 2020:

> Xosomes (XO-XS-0100, 0300, 0500, Exosome Particle Allograft
> Suspension), PRP-XO (Autologous Platelet Rich Plasma
> Exosomes)[43], VidaFlow[44] (Amniotic Cellular Allograft
> Suspension), OsteoFlow[45] (Viable Cellular Bone Allograft),
> VidaFill (Viable Cellular Tissue Cord Allograft), Wharton's Jelly
> aka VidaGel[46] (Umbilical Cord Cellular Allograft Suspension),

---

[36] OSTEOGEL, US Serial Number: 88600281, US Reg. Number: 6018745, Reg. Date: Mar. 24, 2020.

[37] PLEXOCYT, US Serial Number: 88600284, US Reg. Number: 6018746, Reg. Date: Mar. 24, 2020.

[38] EUFILL, US Serial Number: 88600256, US Reg. Number: 6023257, Reg. Date: Mar. 31, 2020.

[39] EUFIXX, US Serial Number: 88600260, US Reg. Number: 6023258, Reg. Date: Mar. 31, 2020.

[40] EUGEL, US Serial Number: 88600265, US Reg. Number: 6023259, Reg. Date: Mar. 31, 2020.

[41] VIDACORD, US Serial Number: 88600288, US Reg. Number: 6023260, Reg. Date: Mar. 31, 2020.

[42] VIDASTEM, US Serial Number: 88600308, US Reg. Number: 6023261, Reg. Date: Mar. 31, 2020.

[43] PX-AE-0000 Autologous Mulitlineage Exosomes.

[44] VIDAFLOW Trademark Application, US Serial Number: 88600300, Application Filing Date: Aug. 30, 2019, Abandoned: Jan. 05, 2021.

[45] OSTEOFLOW Trademark Application US Serial Number: 88600273, Application Filing Date: Aug. 30, 2019, Abandoned: Feb. 11, 2021.

[46] VIDAGEL Trademark Application, US Serial Number: 88600304, Application Filing Date: Aug. 30, 2019,  Abandoned: Jun. 10, 2020.

30

Xocyt[47] (EJ-100- Exosomes), OTOCYT[48], NANOCYT[49] [50] aka VidaMax, PROCYT and COVIXO (defined *infra*) (collectively, the "Eleven Products"); (collectively the Seven Approved Trademarks and the Eleven Products are the "Products").

140.    Whether the trademark application was registered or abandoned, upon information and belief, EuCyt previously asserted pre-petition ownership of each product, the description of the product, the trademark application, product label, and product brochure.

141.    The Products, and their respective unique formulas for production, ownership, intellectual property, and the actual physical inventory of the Products, were not disclosed or turned over to the Trustee.

142.    The Products are assets and property of the Estate and are required to be turned over by Bird and/or one of the Debtor Affiliated Entities to the Estate.

143.    On April 13, 2020, EuCyt conducted an inventory of their assets and products (the "April 13, 2020 Inventory"). The Trustee has not received this April 13, 2020 Inventory report.[51]

144.    This April 13, 2020 Inventory report was produced immediately prior to EuCyt's determination to shut its doors.

---

[47] XOCYT Trademark Application, US Serial Number: 88717233, Application Filing Date: Dec. 05, 2019, Abandoned: April 09, 2021.

[48] OTOCYT Trademark Application, US Serial Number: 88717234, Application Filing Date: Dec. 05, 2019, Abandoned: May 06, 2021.

[49] NANOCYT Trademark Application, US Serial Number: 88839489, Application Filing Date: Mar. 18, 2020, Abandoned: December 03, 2020.

[50] January 26, 2021, in an email Bird acknowledged AVEM Diagnostics possesses NANOCYT: "AVEM Diagnostics provides DNA sequencing for accurate microbial identification using advanced nano technology (NANOCYT). NANOCYT's sequences the codes of over 50,000 microbes to deliver accurate data for your clinical decision-making to target the species causing the infection with DNA guided certainty." Elliott Sauter email: "who is Avem.eml".

[51] S.O.F.A., Part 13, 27.

**EuCyt Remodels Leased Premises Despite Pending Dissolution**

145.    After the FDA Inspections, to comply with FDA regulations, EuCyt remodeled the Leased Premises, in the amount of $321,694.59, which includes the $189,868.97 New Lab Costs, the $72,991.32 Datacor Transfers and the $58,834.30 Paid Rent which total $321,694.59 in value transferred to AVEM Diagnostic and Bird. *See* Exhibit 7, and Exhibit B.[52]

146.    This $321,694.59 in new lab expenses EuCyt incurred by the Petition Date, was transferred to AVEM Diagnostics without EuCyt receiving reasonably equivalent value in exchange.

147.    In a July 8, 2020 email, Bird in complaining about complying with the FDA stated "is it worth doing all this stuff **if we are dissolving EUCYT**" (emphasis supplied).

148.    Bird testified at the 341 Meeting that in August of 2020, AVEM Diagnostics took over the Leased Premises, was assigned the Lease, and currently occupies EuCyt's Leased Premises.

149.    Bird is the beneficial owner of AVEM Diagnostics and EuCyt paid the monthly rent for the Leased Premises for AVEM Diagnostics from August 2020 through December 7, 2020, totaling $58,834.30.  Upon information and belief, EuCyt was not reimbursed for these payments.

150.    Bird testified at the 341 Meeting that the EuCyt file cabinets (the "EuCyt File Cabinets") in the AVEM Diagnostic Leased Premises are only accessible by Bird.  Despite the Trustee's demands, Bird has not turned over the EuCyt documents in the EuCyt File Cabinets to the Trustee.

---

[52] The 2020 General Ledger details innumerable line items and transfer to various companies for lab improvements that are not detailed in this complaint.

**EuCyt's SBA Loan and Transfer of Assets Immediately Thereafter**

151. On July 13, 2020, despite already deciding to shut down, EuCyt received a $150,000 U.S. Small Business Administration loan (the "SBA Loan").[53]

152. Immediately after obtaining the SBA Loan, EuCyt and AVEM Holdings entered into a Distribution and Contribution Agreement (the "Distribution and Contribution Agreement", a copy of which is attached hereto as Exhibit 8) whereby EuCyt transferred and assigned all rights and titles of EuCyt's assets to AVEM Holdings.[54]

153. The Distribution and Contribution Agreement, dated August 1, 2020, was between AVEM Holdings, LLC, a Delaware limited liability company and EuCyt Laboratories, LLC.

154. Bird executed the Distribution and Contribution Agreement as CEO on behalf of AVEM Holdings, LLC. Aaron Coats, as CFO of EuCyt, executed the Distribution and Contribution Agreement on behalf of EuCyt.

155. The Distribution and Contribution Agreement does not list the specific "Assets" transferred, nor their value, nor does it list the specific "Assumed Liabilities".

156. Despite testifying that May and June of 2020 was when they decided to close EuCyt's doors, and after revealing his July 8, 2020 plan of "dissolving EUCYT", Bird exhibited a lack of good faith, intent to hinder, intent to delay, and an intent to defraud creditors in failing to disclose the specific "Assets" transferred, their value, and failing to list the value of the specific

---

[53] *See* EuCyt Claim Register, Claim 7-1, Account Number (last 4 digits): 0632, Part 1 and 2 for $152,481.16*; see also* Schedules [D.I. 13], Schedule E/F, "Creditors Who Have Unsecured Claims, Part 2, 3.8, date incurred July 13, 2020, Last 4 digits of account number 8104, in the amount of $150,000.00, and 3.9, dated incurred May 7, 2020, Last 4 digits of account number 7303, in the amount of $129,442.50.

[54] ¶1 "Eucyt does hereby distribute, assign, transfer, and deliver to Avem all right, title, and interest of Eucyt in and to all of the physical assets and personal property held by Eucyt at its currently location (the "Assets"). Avem acknowledges that certain Assets are subject to liabilities owed on account of such Assets, and Avem will assume such debt related solely to the Assets, along with certain agreed upon trade payables of Eucyt (assumed at the discretion of Avem) (the "Assumed Liabilities")."

consideration of the "Assumed Liabilities" for the August 1, 2020 Distribution and Contribution Agreement.

157.     Bird testified at the 341 Meeting that all assets that were transferred to AVEM Holdings in the Distribution and Contribution Agreement were liened or leased.

158.     Bird has failed to produce or provide any support for such testimony.[55]

159.     Contemporaneous with the Distribution and Contribution Agreement, EuCyt was operating on loans or equity infusions, including the SBA Loan, and the EuCyt Account was running close to zero.

160.     To wit, the Account's ending balance as of June 30, 2020 was $5,656.37, as of July 31, 2020 was $130,526.72 (reflecting the SBA Loan), as of August 31, 2020 was $65,716.61, as of September 30, 2020 was $38,365.15, and as of October 31, 2020 was $9,569.96.

161.     Coats and Bird have not produced any documents or information to the Trustee of the specific "Assets" EuCyt transferred to AVEM Holdings before, on, or after August 1, 2020, and no indication of the value of the individual specific "Assets" transferred except for the nondescript "Assumed Liabilities", that were "liened or leased" (the "Specific Assets and Assumed Liabilities in the Distribution and Contribution Agreement").

### EuCyt Transfer of COVIXO Assets

162.     ARDOXSO™, an AVEM Holdings product, was formerly EuCyt's product "COVIXO".

163.     COVIXO/ARDOXSO is being developed for the treatment of COVID-19.

164.     Bird fraudulently transferred COVIXO later to be known as ARDOXSO to AVEM

---

[55] The SBA filed a proof of claim for a secured claim in the amount of $152,481.16, secured via a blanket lien on all assets with no indication that the SBA Loan and security interest was transferred to AVEM Holdings via the Distribution and Contribution Agreement.

Holdings (and/or the Debtor Affiliated Entities) pre-petition and allegedly under the cover of the Distribution and Contribution Agreement.

165. At the time of the August 1, 2020 Distribution and Contribution Agreement, COVIXO had potential to be extremely profitable to EuCyt.

166. On March 23, 2020, Bird emailed Robertson of Robertson PLLC regarding Argentum Partners, a firm EuCyt hired to lobby Congress, stating "He is trying to get us 1.5 BILLION yes BILLION from Congress"[56] [and the White House].

167. EuCyt on April 1, 2020 filed a trademark application for COVIXO[57], (the "COVIXO Trademark Application", a copy of which is attached hereto as Exhibit 11).

168. On April 3, 2020, Dr. Sant L. Chawla, MD FRACP (the "COVIXO IND Principal Investigator"), sent a letter to Bird, accepting "the opportunity of serving as a principal investigator in your trial" (for COVIXO's FDA IND Application, defined *infra*).

169. In the spring of 2020, EuCyt is violating the FDA prohibitions on selling FDA Restricted Products with one hand, and with the other hand EuCyt is trying to get FDA approval for Covixo for the treatment of COVID-19.

170. On April 10, 2020, Eucyt submitted an "investigational new drug application (IND)" under section 505(i) of the Federal Food, Drug, and Cosmetic Act for "Perinatal Mesenchymal Stem Cell-Derived Exosomes [COVIXO]" for an FDA Clinical Trial (the "FDA IND Application"). The FDA received the FDA IND Application on April 13, 2020.

171. On April 15, 2020, the FDA emailed Bird and Tammy Luttrell of EuCyt with an "Acknowledgement Letter" of EuCyt's IND for COVIXO, confirming EuCyt's IND Reference

---

[56] *See* Exhibit 10, (hereinafter the "Congress Billion Dollar Email (emphasis in the original)).

[57] Mark: COVIXO, US Serial Number: 88856463, Owner Name: EUCYT Laboratories, LLC, Application Filing Date: Apr. 01, 2020, **Date Abandoned: Apr. 29, 2021.**

number of 20582, and that the IND was pending approval for a Phase I Clinical Trial for COVIXO for the treatment of COVID-19 (the "COVIXO IND 20582").

172.    On May 8, 2020, EuCyt issued a Press Release stating: "Joining the worldwide race for an effective treatment, EUCYT's Investigation New Drug (IND) is pending approval. The company is working closely with the FDA and looks to start a Phase I Clinical Trial soon" (the "Press Release", a copy of which is attached hereto as Exhibit 12).

173.    To conduct a "Phase I Clinical Trial", EuCyt needed to have an FDA approved IND and "an approved biologics license application (BLA)"[58].  Coats and Bird did not disclose or turn over to the Trustee any of the documents associated with the IND or the BLA.[59]

174.    On May 5, 2020, Bird instructed Robertson PLLC regarding a letter of intent with Korea Heavy Industry and Development Co. Ltd.: "Taylor can you make it more clear the investment is in EuCyt Laboratories not just EuCyt our whole company as we have multiple divisions."

175.    On May 6, 2020, Bird emailed Robertson PPLC with suggested changes to the letter of intent (the "KHIND Letter of Intent"). This email also attached a May 6, 2020 email from Bruce Blechman, CEO of Entrepreneur Capital Corporation's email regarding KHIND, stating:

> After execution of the License Agreement KHIND[60] can immediately make a payment of Two Hundred and Twenty-Five Million US Dollars ($225,000,000) to Eucyt to make and distribute COVIXO anywhere in their

---

[58] *See* the FDA Warning Letter, Exhibit 1.

[59] Elliott Sauter did produce on February 18, 2022 to the Trustee, pursuant to a Section 542 Letter, substantially EuCyt's FDA IND application file, however, the official transfer documents for AVEM Holdings to the FDA were not produced.

[60] Bird in a May 5, 2020 email to Robertson PLLC forwarded the May 1, 2020 email of Bruce Blechman, CEO of Entrepreneur Capital Corporation that KHIND: "…they can easily write a check for one billion dollars.  They build (sic) the tallest building in the world in Dubai!"

excusive Territory.[61]

(the "KHIND Investment Agreement").

176.    KHIND was ultimately proposing investments totaling up to a billion dollars.

177.    On May 9, 2020, KHIND executed the letter of intent (the "KHIND Letter of Intent"), a copy of which is attached hereto as Exhibit 13, (however EuCyt did not execute this exhibit). When "executed by the parties" the KHIND Letter of Intent required KHIND to make a 5 million dollar equity payment (the "Equity Payment"); and on or before the expiration of First Option, "KHIND may exercise its rights to pay to Eucyt the sum of Twenty-Five Million US Dollars ($25,000,000), for which KHIND will receive an additional equity position in Eucyt (the "Equity Investment"); and for certain milestone payments on or before the expiration of Second Option, KHIND would receive an exclusive license within the "Exclusive Territory" for COVIXO.

178.    The FDA was also aware of EuCyt's ownership and marketing of COVIXO.

179.    The FDA Warning Letter commented on EuCyt's unlawful marketing of COVIXO and the lack of an approved "investigational new drug application (IND)" and "an approved biologics license application (BLA)..." and "[b]ased on this information, we have determined that your actions have violated the FD&C Act and the PHS Act."[62] *See* Exhibit 1.

---

[61] (Hereinafter the "225 Million Dollar Email", a copy of which is attached hereto as Exhibit 9, (emphasis in the original)).

[62]    "Most recently, you began marketing an exosome product, COVIXO, for the treatment or prevention of patients' Coronavirus Disease 2019 (COVID-19). Your https://eucyt.com/products/covixo/ website states "COVIXO drives cellular functionality including augmenting the type 1 interferon pathway . . . that is important for anti-SARS-CoV-2 activity" and "[t]he unique mechanism of action for COVIXO enables each patient to generate their own adaptive immune response against SARS-CoV-2, including memory T cells and antibodies, which will further protect each patient from subsequent exposures and infections."

"These exosome products, XOsomes™ and COVIXO (formerly known as XOCYT™) are regulated as drugs and biological products under section 351 of the PHS Act and the FD&C Act and are subject to premarket review and approval requirements.

"Please be advised that to lawfully market a drug that is a biological product, a valid biologics license must be in effect [42 U.S.C. 262(a)]. Such licenses are issued only after showing that the product is

180.     On June 12, 2020, the Office of Tissues and Advanced Therapies, Center for Biologics Evaluation and Research ("CBER") issued a Clinical Hold IND 20582 letter to EuCyt (the "FDA's Clinical Hold Letter").

181.     On June 12, 2020, Bird sent an email to Elliot Sauter regarding the FDA's Clinical Hold Letter stating: "… This is a life and death situation and need to get this submittal back to FDA and get IND approval…."

182.     On June 15, 2020, after the FDA Warning Letter, Bird emailed KHIND and Elliott Sauter (the "June 15, 2020 Email") stating "[l]astly I did inform Mr. Baek [of KHIND] that **EUCYT is in the process of having an asset purchase with AVEM Holdings and the investment would now be inside of AVEM Holdings that owns the IP for EUCYT LABORATORIES**" (the "AVEM Holdings/EuCyt Intellectual Property Agreement") (emphasis supplied). *See* Exhibit 14.

183.     Bird and/or Coats have not produced to the Trustee the AVEM Holdings/EuCyt Intellectual Property Agreement or documents supporting such a claim.

184.     Whatever "Equity Payment(s)" or investments of KHIND for rights in COVIXO, that Bird diverted from EuCyt and KHIND paid to AVEM Holdings (or any John Doe Entity or Debtor Affiliated Entities) pursuant to the Letter of Intent or the KHIND Investment Agreement constitute fraudulent transfers, through which Bird intended to profit himself and with an intent to defraud the creditors of the Debtor (the "KHIND Fraudulent Investment Transfers").

185.     The June 15, 2020 Email, six weeks before the Distribution and Contribution

---

safe, pure, and potent. While in the development stage, such products may be distributed for clinical use in humans only if the sponsor has an investigational new drug application (IND) in effect as specified by FDA regulations [21 U.S.C. 355(i); 42 U.S.C. 262(a)(3); 21 CFR Part 312]. None of your products are the subject of an approved biologics license application (BLA), nor is there an IND in effect for any of them. Based on this information, we have determined that your actions have violated the FD&C Act and the PHS Act." *See* Exhibit 1, FDA Warning Letter, p. 3.

Agreement, evidences Bird's intent to defraud creditors by transferring EuCyt assets, *i.e.* COVIXO, to AVEM Holdings before Bird "dissolved" EuCyt or filed the bankruptcy petition.

186.    Regardless of the June 15, 2020 Email, in a June 30, 2020 Letter to Bird, KHIND addressed EuCyt and EyCyt's asset of COVIXO:

> KHIND has been told that Eucyt will soon be approved by the FDA's IND, and will then enter into the first phase of testing, which to us, is definitely good news.
>
> Based on our agreement with you on May 9, 2020, KHIND have clearly stated, that we are willing to invest in the production, marketing and global distribution of the full-fledged therapeutics, after the joint clinical and FDA approval of COVIXO, which is under development at your company….
>
> Moving forward, KHIND would like to set-up a meeting with you at your office in Las Vegas **to reconfirm and finalize our investment**, through a public announcement of your FDA IND and Phase One process, which we hope to be starting soon.

*See* Exhibit 15, (emphasis supplied).

187.    Bird and/or Coats have not produced to the Trustee the KHIND Letter of Intent or any type of a KHIND Investment Agreement dated after June 30, 2020 (allegedly now with AVEM Holdings), or the AVEM Holdings/EuCyt Intellectual Property Agreement.

188.    On July 11, 2020, Elliott Sauter drafted EuCyt's response to the FDA Warning Letter asserting parts of the Warning Letter were inaccurate and wanting retractions so as not to harm EuCyt's business (the "Response to Warning Letter #OBPO 20-603498").

189.    The Distribution and Contribution Agreement did not specify or disclose that EuCyt transferred the asset of the COVIXO product to AVEM Holdings or the transfer of EuCyt's Intellectual Property. *See* Exhibit 8.

190.    On November 5, 2020, the FDA notified Ms. Luttrell, that EuCyt had satisfied all clinical issues of the FDA Clinical Hold raised in the FDA IND Application #20582 and EuCyt

was being released to proceed to the Phase I clinical trial phase.

191.    Coats and Bird did not disclose to the Trustee the existence of the FDA COVIXO IND 20582 or the November 5, 2020 FDA approval for COVIXO to proceed to a Phase I Clinical Trial (the "COVIXO Clinical Study"), just one month before the Petition Date.

192.    After the November 5, 2020 FDA approval for COVIXO to proceed to a Phase I Clinical Trial, Bird and EuCyt proceeded to rename COVIXO to ARDOXSO and transfer the COVIXO IND 20582 to AVEM Holdings, and/or AVEM Biopharmaceuticals, and/or AVEM Labs.

193.    A EuCyt Word document, created November 24, 2020, drafted by Amy McFarland and edited by Tammy Luttrell, contains two draft November 2020 letters to the FDA[63] transferring the COVIXO IND 20582 to AVEM Holdings (the "COVIXO IND November 2020 Transfer Letters").

194.    The first letter to the FDA with the subject line of "RE: <u>IND Change of Sponsorship Request—IND 20582</u>" was drafted for the signature of Bird as CEO of EuCyt, stating:

> This letter is to inform you that EUCYT Laboratories, LLC [has transferred/will be transferring] sponsorship of the above referenced Investigational New Drug ("IND") application for "Perinatal Mesenchymal Stem Cell-derived Exosomes [COVIXO]" to AVEM Holdings, including all rights to the application and all sponsor obligations, as set forth under 21 C.F.R. Part 312.
>
> The transfer is effective as of [date], and the new contact person for all correspondence relating to the above referenced IND is as follows: **Tammy Luttrell, Ph.D., Chief Scientific Officer, AVEM Biopharmaceuticals**…

[Emphasis supplied].

---

[63] Office of Tissues and Advanced Therapies, Center for Biologics Evaluation and Research ("CBER"), of the U.S. Food and Drug Administration.

195.     The second letter,[64] with a subject line of "Re: <u>IND Acceptance of Sponsors—IND</u>

<u>20582</u>" was set up for the signature of Tammy Luttrell, of AVEM Holdings, stating:

> This letter is to inform you that EUCYT Laboratories, LLC [has transferred/will be transferring] sponsorship of the above referenced Investigational New Drug ("IND") application for "Perinatal Mesenchymal Stem Cell-derived Exosomes [COVIXO]" to AVEM Holdings as of [date]. A complete copy of the IND records has been provided to AVEM Holdings by EUCYT Laboratories.
>
> Pursuant to 21 C.F.R. § 314.72, AVEM Holdings hereby accepts the transfer of sponsorship of the IND, and accepts the commitment to the agreements, promises, and conditions made by the former IND owner (EUCYT Laboratories) and contained in the IND application.
>
> AVEM Holdings further agrees to amend the IND within sixty (60) days to cover any and all changes in the IND that result from the change in sponsorship, and to provide subsequent changes by amendments in accordance with FDA regulations….

196.     On November 24, 2020, EuCyt created a seventy-seven (77) page document

entitled "ARDOXSO Protocol 20.42.05 Ver 5 05.11.20 tl.pdf" to be sent to the FDA regarding

COVIXO IND 20582, asserting AVEM BioPharmaceuticals, LLC and AVEM Laboratories, LLC

were presenting the report, and for the first time asserting the name ARDOXSO™ (the "Summary

Protocol Report"). *See* <u>Exhibit 17</u>.

197.     However, the five previous versions of the Summary Protocol Report, first created

on April 28, 2020, and four of the five versions used the conventions of EuCyt and COVIXO™.[65]

---

[64] As of November 24, 2020, the two draft letters are still using the names "EUCYT Laboratories, LLC" and "COVIXO". *See* <u>Exhibit 16</u>. Neither Bird nor Coats has turned over to the Trustee the final executed EuCyt and/or AVEM Holdings copy of the COVIXO IND November 2020 Transfer Letters to AVEM Holdings, or the executed copies filed with the FDA, nor did Bird disclose this transfer on the S.O.F.A. or in Bird's 341 Testimony to the Trustee.

[65] However, Version 1 of the Summary Report: Protocol, entitled "COVIXO PROTOCOL", was created on April 28, 2020, version 2 was created on May 1, version 3 was created on May 6, version 4 was created on May 8, 200 all using EuCyt Laboratories, LLC and the name "COVIXO™".

The first version of version 5, was created May 11, 2020 but last modified on November 24, 2020 using "AVEM BIOPHARMACEUTICALS, LLC", AVEM Laboratories, LLC, but still using "COVIXO™", using "COVIXO™" sixty-seven (67) times throughout the report.

198.    Not until November 24, 2020, one month before the Petition Date, was the name ARDOXSO used in the place of COVIXO.

199.    Neither Coats nor Bird have produced the executed Summary Protocol Report filed with the FDA.

200.    On November 24, 2020, AVEM BioPharmaceuticals completed the "Investigational New Drug Application (IND)" to the FDA for the drug "ARDOXSO", amending COVIXO IND 020582 application, with the "Name of Sponsor or Sponsor's Authorized Representative" as "Tammy Luttrell, PhD; Chief Scientific Officer for AVEM Biopharmaceuticals" (the "Amended COVIXO IND 020582 Application").[66] *See* Exhibit 18.[67]

201.    Neither Coats nor Bird have produced the final executed Amended COVIXO IND 020582 Application filed with the FDA.

202.    The S.O.F.A., signed by Bird, states:

> Part 3, Legal Actions or Assignments. 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits. List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

and did not list a single major governmental action; not the FDA, not the CDC investigations, nor the Nevada State Board of Pharmacy proceeding, nor the Nebraska Department of Public Health

---

The second version of version 5, still entitled "COVIXO PROTOCOL", was created on November 24, 2020, using "AVEM BIOPHARMACEUTICALS, LLC" and AVEM Laboratories, LLC, but changed "COVIXO" to ARDOXSO™, using ARDOXSO™ sixty-seven (67) times throughout the report.

[66] The COVIXO IND November 2020 Transfer Letters, the Summary Protocol Report, the Amended COVIXO IND 020582 Application and the AVEM 1571 DRAFT.pdf (collectively are the "Draft November 24, 2020 Documents"), allegedly filed with the FDA fraudulently transferring the FDA Clinical Trial IND for COVIXO, the ARDOXSO™ Clinical Trial Transfer.

[67] While the document is labeled "AVEM 1571 DRAFT.pdf", the document has an executed handwritten signature of Tammy Luttrell, the Sponsor, and the metadata of the document indicates it was created on November 24, 2020.

proceeding, nor the transfer of the final executed copies of the COVIXO IND November 2020 Transfer Letters. The S.O.F.A. did not identify the executed Summary Protocol Report, nor the final executed Amended COVIXO IND 020582 Application. There was no mention of the various above items filed with the FDA to transfer COVIXO to AVEM Holdings in the administrative agency of the FDA.

203.    In the S.O.F.A., "Part 2: 4: Payments or other transfers of property made within 1 year before filing this case that benefited any insider, signed by Travis Bird, did not list the February–July 2020 Asset Transfers, nor the KHIND Fraudulent Investment Transfers, nor the transfer of COVIXO to AVEM Holdings in the Distribution and Contribution Agreement, nor the transfer of the COVIXO IND 020582 to AVEM Holdings in the administrative agency of the FDA, nor the AVEM Holdings/EuCyt Intellectual Property Agreement, nor the Amended COVIXO IND 020582 Application, nor the ARDOXSOTM Clinical Trial Transfer.

204.    In the Debtor's Schedules, signed by Bird, Official Form 206A/B, Schedule A/B: Assets - Real and Personal Property, Part 10: Intangibles and intellectual property, #59 and #60, indicated the Debtor has intellectual property, and the "Trademark application (expired)[68] for "Covixo"" and it has no book value or current value, despite the fact that Byrd and EuCyt allegedly had a multi-million investment deal with KHIND for COVIXO.

205.    While Bird asserted COVIXO had no book value or current value, that did not stop Bird and AVEM Holdings, with the hope of a windfall if COVIXO nka as ARDOXSO™ was FDA approved for the treatment of COVID, from filing an FDA IND Clinical Trial Application for COVIXO nka ARDOXSO™.

---

[68] Despite the fact, Bird filed the Schedules on January 11, 2021, and asserted the COVIXO trademark application had "expired", the USPTO did not abandon the COVIXO trademark application until April 29, 2021, four months after the Petition Date.

206.     As of December 2021, ARDOXSO™ was in an FDA regulated Phase I clinical trial study for the treatment of COVID, ClinicalTrials.gov Identifier: NCT04798716 (the "ARDOXSO™ Clinical Trial", a copy of which is attached hereto as <u>Exhibit 19</u>).[69]

207.     The Trustee is alleging against Bird the fraudulent transfer by Bird of the Eucyt COVIXO Clinical Study to the ARDOXSO™ Clinical Trial owned and controlled by AVEM Holdings (the "ARDOXSO™ Clinical Trial Transfer")".

208.     The ARDOXSO™ Clinical Trial contact person is identified as: Tammy C. Luttrell, PhD, 833-957-0079, tammy.luttrell@avemhealthcare.com. *See* <u>Exhibit 19</u>, pg. 8 of 10. The Debtor's Statement of Financial Affairs [D.I. 14], Part 13, #29, identifies "Tammy Luttrell" as "Chief Scientific Officer" employed by EuCyt from "1/27/20 - 10/31/20".

209.     Tammy Luttrell, for EuCyt, is quoted in the May 8, 2020 Press Release regarding COVIXO:

> Essentially, COVIXO would boost the individual's own immune system. The hope is that the body will be able to fight off the disease by promoting the rapid generation of healthy immune cells," said Tammy Luttrell Ph.D., EUCYT's Chief Scientific Officer. "These stem cells are recovered from healthy donated tissue and serve as messengers between cells and also contain valuable information about the function of the body's organs, including the lungs, where extreme inflammation and complications often occur as a result COVID-19 infection.

*See* <u>Exhibit 12</u>.

210.     After the filing of the Bankruptcy Petition, whether in the Statement of Financial of Affairs or in Bird's testimony at the 341 Meeting of Creditors before the Trustee, Bird failed to

---

[69] https://clinicaltrials.gov/ct2/results?term=ARDOXSO
Clinical Trial Re: ARDOXSO, (an interventional exosome therapy in COVID-19)
ClinicalTrials.gov Identifier: NCT04798716, Unique Protocol ID: 020582
Sponsors and Collaborators: AVEM HealthCare, LLC
Brief Title: "The Use of Exosomes for the Treatment of Acute Respiratory Distress Syndrome or Novel Coronavirus Pneumonia Caused by COVID-19 (ARDOXSO)".
Up to date changes can be found at: https://clinicaltrials.gov/ct2/history/NCT04798716

disclose to the Trustee the alleged transfer of COVIXO to AVEM Holdings, of which Bird is at least part owner.

211.    There is no evidence that COVIXO was specifically identified as being transferred in the Distribution and Contribution Agreement or that COVIXO was liened or leased, yet, AVEM Holdings (or the Debtor Affiliated Entities) now has the asset COVIXO nka ARDOXSO™ in the ARDOXSO™ Clinical Trial.

212.    The intellectual property and any other rights to COVIXO and the other Products were not turned over by Bird to the Trustee as assets and property of the Estate.

213.    The October 30, 2019 E-coli Poisoning, the FDA Inspections on November 12 through 21, 2019 and February 19 and 20, 2020, the FDA Warning Letter, the potential liability of the Lawsuits, the potential financial windfall if COVIXO was FDA approved to treat COVID-19, were all cumulative factors influencing Bird to conspire to secretly and fraudulently transfer COVIXO to AVEM Holdings without specific disclosure to the Trustee.

### Three Withdrawals and Three Checks

214.    Coats, AVEM Labs, AVEM Medical, and Bird are the defendants involved in various aspects of the withdrawals and the checks.

215.    Coats made the following withdrawals (the "Withdrawals", each a "Withdrawal") from the Account, without any indication on the Withdrawal slips, or the Account's November 30, 2020 Bank Statement indicating if the Withdrawals benefitted a specific entity, or the reason for the Withdrawal:

      a.    on November 12, 2020, withdrawal 4055, in the amount of $32,000.00[70];

---

[70] EuCyt's 2020 General Ledger indicates the "Cash" was for "AVEM Labs, LLC".

b.      on November 12, 2020, withdrawal 9559, in the amount of $32,010.00[71]; and

c.      on November 25, 2020, withdrawal 2980, in the amount of $10,000.00[72],

(the Withdrawals total $74,010.00, the "Coats $74,010.00 Transfers"). *See* <u>Exhibit 20</u>.

216.     However, EuCyt's 2020 General Ledger does list AVEM Labs for the first two Withdrawals and AVEM Medical for the third Withdrawal, as Bird is the beneficial owner of AVEM Labs and sole owner of AVEM Medical, he is listed as a defendant benefitting from the Coats $74,010.00 Transfers.

217.     EuCyt paid AVEM Labs, LLC the following three checks:

a.      on December 8, 2020, check no. 1686, in the amount of $25,000.00;

b.      on December 18, 2020, check no. 1693, in the amount of $22,500.00; and

c.      on December 22, 2020, check no. 1694, in the amount of $500.00,

(the checks total $48,000.00 (the "Checks" and/or "AVEM Labs $48,000.00 Transfers")). *See* <u>Exhibit 21</u>. Bird is the beneficial owner of AVEM Labs and is a defendant benefitting from the AVEM Labs $48,000.00 Transfers. *See* <u>Exhibit A Coats/AVEM Labs</u>.

218.     For the AVEM Checks, the Account's December 2020 Bank Statement, and EuCyt's 2020 General Ledger do not indicate any reason for the AVEM Labs $48,000.00 Transfers.

219.     Coats signed the three Checks EuCyt made for the AVEM Labs $48,000.00 Transfers, and all were made within sixteen (16) days of the Petition Date.

220.     Coats was in control of the Account as CFO of EuCyt.

---

[71] EuCyt's 2020 General Ledger indicates the "Cash" was for "AVEM Labs, LLC".

[72] EuCyt's 2020 General Ledger indicates the "Cash" was for "AVEM Medical, LLC".

221.    Coats is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

222.    Coats is the CFO and the authorized official contact for AVEM Labs, and the CFO of AVEM Medical.

223.    AVEM Holdings is the managing member of AVEM Labs with a mailing address at 401 Ryland St., Suite 200-A, Reno, NV, 89502; and Bird is a beneficial owner of AVEM Labs.

224.    Bird is the 100% owner of AVEM Medical.

225.    Coats made, received and benefited from the Coats $74,010.00 Transfers within two years prior to the Petition Date.

226.    AVEM Labs received and or benefited from $64,010.00 of the Withdrawals.

227.    AVEM Medical received and or benefited from $10,000.00 of the Withdrawals.

228.    Bird as the owner of AVEM Medical and beneficial owner of AVEM Labs benefited from the Coats $74,010.00 Transfers.

229.    AVEM Labs received and or benefited from the AVEM Labs $48,000.00 Transfers.

230.    Bird is the beneficial owner of AVEM Labs and is a defendant benefitting from the AVEM Labs $48,000.00 Transfers.

231.    EuCyt received less than reasonably equivalent value in exchange for the Coats $74,010.00 Transfers and the AVEM Labs $48,000.00 Transfers and was insolvent on the dates the transfers were made or became insolvent as a result of the transfers.

232.    On the dates of the transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

233.    On the date of the transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

234.    The Account's ending balance as of November 12, 2020, the day of the two largest Withdrawals, was $4,321.68.  *See* Exhibit 22.

235.    The Account's ending balance as of November 30, 2020 was $10,009.34 (*see* Exhibit 22) and as of December 23, 2020 at the Petition Date was $6,594.18 (*see* Exhibit 23).

236.    The Debtor, Bird, and Coats concealed the Coats $74,010.00 Transfers and the AVEM Labs $48,000.00 Transfers on the Schedules, on the S.O.F.A., at the 341 Meeting, from the Trustee and the creditors of the Debtor.

237.    Coats did not act in "good faith" in making the Withdrawals, and in signing the three Checks for AVEM Labs, as there was a lack of an arm's length transaction, as Coats was an insider, as the CFO of EuCyt and CFO of AVEM Labs, and CFO of AVEM Medical.

238.    Bird did not act in "good faith" as there was a lack of an arm's length transaction, he was the beneficial owner of EuCyt when he received the benefit of the Coats $74,010.00 Transfers and the AVEM Labs $48,000.00 Transfers as the beneficial owner of AVEM Labs and the sole owner of AVEM Medical.

239.    Coats and Bird have not produced documents to the Trustee regarding the transfers.

**The Leasehold Improvement Transfers**

240.    From the November 2019 FDA Inspections onward, if EuCyt was ever to re-open their lab EuCyt need to make improvements to the lab to comply with FDA regulations.  *See* Exhibit 1.  Bird asserted the lab improvements would be done by February 2020, but most of the improvements were in the summer of 2020.

241.    EuCyt transferred approximately $321,694.59 on the lab improvements, software

and rent costs. *See* Exhibit B AVEM Diagnostics.

242.    Bird testified at the 341 Meeting that AVEM Diagnostic, headquartered in Dallas, Texas, in August of 2020 took over the Leased Premises, was assigned the Lease, and occupies EuCyt's Leased Premises in Las Vegas, Nevada.

243.    As of June 16, 2020, EuCyt had paid Kalb Industries of Nevada, Ltd. ("Kalb") $104,107.00, with other construction costs for the lab of $6,615.06. *See* Exhibit 7. However, upon information and belief, the EuCyt 2020 General Ledger indicates EuCyt paid Kalb by July 8, 2020 $198,507.92 and with the other construction costs of $6,615.06 (the "$205,122.98 New Lab Costs").

244.    Denise Bird on June 16, 2020 stated EuCyt had paid "and an additional $45K on the DataCor software" ($45,617.00). *Id.* However, upon information and belief, the EuCyt 2020 General Ledger indicates EuCyt paid DataCor in 2020 $95,316.32 (the "$95,316.32 Datacor Transfers").

245.    The $189,868.97 New Lab Costs and the $72,991.32 Datacor Transfers were transferred to AVEM Diagnostics as AVEM Diagnostics assumed the Lease without EuCyt receiving reasonably equivalent value in exchange.

246.    EuCyt paid the monthly rent for the Leased Premises of totaling $58,834.30 for the benefit of AVEM Diagnostics and Bird, after AVEM Diagnostics took possession of the Leased Premises, from August 1, 2020 through December 23, 2020, without EuCyt receiving reasonably equivalent value in exchange (the "$58,834.30 Paid Rent"). *See* Exhibit B AVEM Diagnostics.

247.    The Leasehold Transfers total $321,694.59, which includes the $189,868.97 New Lab Costs, the $72,991.32 Datacor Transfers and the $58,834.30 Paid Rent in value transferred to AVEM Diagnostic and Bird (collectively, the "Leasehold Transfers"). *See* Exhibit B AVEM

Diagnostics; *see also* <u>Exhibit 7</u>.

248.    Bird, at minimum, is the beneficial owner of AVEM Diagnostic.

249.    Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

250.    EuCyt made and AVEM Diagnostic and Bird benefitted from the Leasehold Transfers from the Debtor on or within two years prior to the Petition Date.

251.    The Leasehold Transfers, during the 548 Transfer Period, were an interest of the Debtor in property and constituted transfers to or for the benefit of AVEM Diagnostic and Bird.

252.    The Debtor voluntarily or involuntarily made the Leasehold Transfers through the control of insider Bird.

253.    EuCyt received less than a reasonably equivalent value in exchange for the Leasehold Transfers to AVEM Diagnostic and Bird and was insolvent on the dates the Leasehold Transfers were made or became insolvent as a result of the Leasehold Transfers.

254.    On the dates of the Leasehold Transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

255.    On the date of the Leasehold Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

256.    The Account's ending balance as of June 30, 2020 was $5,656.37, as of July 31, 2020 was $130,526.72, as of August 31, 2020 was $65,716.61, as of September 30, 2020 was $38,365.15, and as of October 31, 2020 was $9,569.96.

257.    Bird, CEO of EuCyt, as the beneficial owner of EuCyt, and at minimum an beneficial owner of AVEM Diagnostics did not act in "good faith" in making the Leasehold

Transfers, as there was a lack of an arm's length transaction.

258. Bird and Coats have not produced documents regarding the assignment or assumption of the Leased Premises to AVEM Diagnostics, LLC.

**Summary**

259. Section 541(a)(1) of the Bankruptcy Code, defines property of the Estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case", and would therefore include the EuCyt Documents and the Products.

260. Section 543 of the Bankruptcy Code which, to the extent applicable, requires "custodians" to "deliver to the trustee any property of the debtor held by or transferred to such custodian…", the Trustee is requesting from the custodians defined as the "Defendants" to produce the EuCyt Documents and/or turnover property and assets of EuCyt, including but not limited to the Products, during the EuCyt Two and a Half Year Period.

261. Bird and Coats exhibited a lack of good faith, intent to hinder, intent to delay, and an intent to defraud creditors in the following events and in failing to disclose and failing to produce relevant documents to the Trustee regarding the 2019 Bird Dividend, EuCyt 2019–2020 Sales and Shipments to MediSource, the 2019-2020 income payments to EuCyt that were allegedly shared or split with Medisource/Avem Medical, the "Alleged Diversion Payments", the FDA Inspections, the Disputed AR Invoices, the Alleged $150,000 Regenerative Shipments, EuCyt FDA Responses, CDC Investigation, the February-July 2020 Asset Transfers, the KHIND Fraudulent Investment Agreement Transfers, the Specific Assets and Assumed Liabilities in the Distribution and Contribution Agreement, the COVIXO transfer to AVEM Holdings, nor the ARDOXSO$^{TM}$ Clinical Trial Transfer, nor the transfer of the COVIXO IND 020582 to AVEM Holdings, nor the AVEM Holdings/EuCyt Intellectual Property Agreement, the Coats $74,010.00

Transfers, nor the AVEM Labs $48,000.00 Transfers, nor the $256,899.11 Count VIII AVEM Diagnostics Transfers, the secrecy or concealment of the above cited transactions transferred nearly the entirety of Debtor's Estate, and clearly exhibits an intent to hinder, to delay, and to defraud creditors of the Estate.

262.    All of the asset transfers to Bird, and/or Coats, or to the John Doe Entities in which Bird controls, transferred all or almost all of the Debtor's Estate, as Wells Fargo turned over only $41,594.18 of cash to the Trustee.

**COUNT I**
**TURNOVER OF PROPERTY OF THE ESTATE**
**(11 U.S.C. § 542(e))**

Plaintiff v. Aaron Coats and Travis H. Bird.

263.    The Plaintiff realleges and incorporates by reference the allegations of the previous paragraphs as if fully set forth herein.

264.    This is a cause of action against Aaron Coats and Travis H. Bird (collectively the "542(e) Defendants") for turnover of EuCyt Documents to the Trustee pursuant to Section 542(e) of the Bankruptcy Code, which provides in relevant part that:

> (e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

265.    The EuCyt Documents constitute property of, and/or recorded information relating to the Debtors' property or financial affairs pursuant to Section 542(e) of the Bankruptcy Code, and therefore may be recovered by the Trustee.

266.    As a result of the foregoing, the Trustee is entitled to the immediate turnover, pursuant to Section 542(e), from Aaron Coats and Travis H. Bird of the EuCyt Documents.

**COUNT II**
**TURNOVER OF ASSETS OF THE ESTATE**
**(11 U.S.C. § 542(a))**

Plaintiff v. Travis H. Bird, AVEM Holdings, LLC,
AVEM Medical, LLC, the John Doe Entities, and Debtor Affiliated Entities

267.     The Plaintiff realleges and incorporates by reference the allegations of the previous

paragraphs as if fully set forth herein.

268.     This is a cause of action against Bird, AVEM Holdings, AVEM Medical, the John

Doe Entities, and remaining Debtor Affiliated Entities, for turnover of EuCyt assets and property,

any EuCyt asset and property transferred at any point in time, including but not limited: EuCyt

2019–2020 Sales and Shipments to MediSource, the 2019-2020 income payments to EuCyt that

were allegedly shared or split with Medisource/Avem Medical, the "Alleged Diversion Payments",

to the February-July 2020 Asset Transfers, the KHIND Fraudulent Investment Transfers, the

transfer pursuant to the AVEM Holdings/EuCyt Intellectual Property Agreement, the transfers to

AVEM Holdings, and/or the John Doe Entities or other Debtor Affiliated Entities, pursuant to the

Distribution and Contribution Agreement, including but not limited to EuCyt's lab equipment, the

Products including COVIXO nka ARDOXSO™, and the asset transfers of the Products, including

NANOCYT to AVEM Medical, and the ARDOXSO™ Clinical Trial Transfer (collectively the

"EuCyt Assets and Property"), to the Trustee pursuant to Section 542(a) of the Bankruptcy Code,

which provides in relevant part that:

> (a) an entity . . . in possession, custody, or control, during the case, of
> property that the trustee may use, sell, or lease under section 363 of this
> title . . . *shall deliver to the trustee, and account for, such property or
> the value of such property*, unless such property is of inconsequential
> value or benefit to the estate.

(Emphasis supplied).

269.     The EuCyt Assets and Property constitute property of the Debtor, and of the Estate

pursuant to Section 542(a) of the Bankruptcy Code, and therefore may be recovered by the Trustee.

270.    This count also requires the turnover of the EuCyt's intellectual property transferred pursuant to the AVEM Holdings/EuCyt Intellectual Property Agreement ("EuCyt's Intellectual Property"), which constitutes property of the Debtor, and of the Estate pursuant to Section 542(a) of the Bankruptcy Code, and therefore may be recovered by the Trustee.

271.    Bird, the beneficial owner of EuCyt through EuCyt Holdings, as well as EuCyt's Manager, CEO, and in control of EuCyt, transferred EuCyt Assets and Property to entities he owns and controls: AVEM Holdings, and/or AVEM Medical, and/or the John Doe Entities and any remaining Debtor Affiliated Entities.

272.    As a result of the foregoing, the Trustee is entitled to the immediate turnover from Bird, and/or AVEM Holdings, and/or AVEM Medical, and/or the John Doe Entities and any remaining Debtor Affiliated Entities, the EuCyt Assets and Property.

## COUNT III
## REQUEST FOR AN ACCOUNTING

### Plaintiff v. Travis H. Bird and Aaron Coats

273.    As set forth above, the Debtor's funds and property, EuCyt Assets and Property, that have been wrongfully diverted as a result of actions of Bird and/or other wrongdoing for the benefit of AVEM Holdings, LLC, AVEM Medical, LLC, the John Doe Entities, and the Debtor Affiliated Entities.

274.    To fully quantify the amount of funds and property improperly transferred from the Debtor, it will be necessary for the Trustee to obtain an accounting of such transfers of funds and property.

275.    Complete information regarding the details of all such transfers and transactions are within the possession, custody and control of Bird and Coats.

**COUNT IV**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**(11 U.S.C. § 548(a)(1)(B))**

Plaintiff v. Travis H. Bird

276.    The Plaintiff realleges and incorporates by reference the allegations of the previous

and following paragraphs as if fully set forth herein.

277.    11 U.S.C. 548(a)(1)(B) states:

> (i)    received less than a reasonably equivalent value in exchange
> for such transfer or obligation; and
>
> (ii)
> (I) was insolvent on the date that such transfer was made or
> such obligation was incurred, or became insolvent as a result of such
> transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about
> to engage in business or a transaction, for which any property
> remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would
> incur, debts that would be beyond the debtor's ability to pay as such
> debts matured; or…

278.    Bird, the Count IV Defendant, on Friday, November 8, 2019 had EuCyt make an

online transfer to himself for the 2019 Bird Dividend, (the "Count IV 548 Transfer"). *See* Exhibit

5.

279.    Bird, upon information and belief the sole member of EuCyt Holdings, LLC, is the

beneficial owner of EuCyt, as he was paid by EuCyt the 2019 Bird Dividend.

280.    Bird in 2017 with his federal tax return filed a Schedule C "Profit or Loss From

Business" for EuCyt LLC, and in 2018 and 2019 filed Schedule C's for EuCyt Laboratories, LLC.

281.    Bird was in control as the Manager and CEO of EuCyt.

282. Bird was in control of the Debtor at the time the $500,000 2019 Bird Dividend was made.

283. Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

284. The 548 Transfer Period is from December 24, 2018 through December 23, 2020, (the "548 Transfer Period").

285. The Debtor made and Bird received and benefited from the 2019 Bird Dividend from the Debtor on or within two years prior to the Petition Date.

286. The 2019 Bird Dividend was an interest of the Debtor in property and constituted a transfer to or for the benefit of Bird.

287. The Debtor voluntarily or involuntarily made the 2019 Bird Dividend through the control of insider Bird.

288. Prior to October 30, 2019, Bird and EuCyt knew of the sterility failure of E. coli in a EuCyt product in their own laboratory and through a third-party testing laboratory.

289. By October 31, 2019, Bird and EuCyt had received Regenerative Notification from Regenerative.

290. On November 4, 2019, the Center for Disease Control contacted EuCyt regarding the CDC Investigation.

291. By November 8, 2019, the FDA notified Bird and EuCyt of the first FDA inspection on November 12, 2019.

292. On November 8, 2019, Bird on behalf of EuCyt hired Elliott Sauter as counsel to handle the CDC/FDA investigations and prepare for the potential lawsuits. *See* Exhibits 2 and 3.

293. After the October 30, 2019 E. coli event, Bird allegedly knew it was a major

financial blow to EuCyt's business, so he withdrew $500,000 while EuCyt still had resources before EuCyt's financial collapse.

294.    Mr. Autor of Regenerative was also on the November 8, 2019 phone call with the FDA and Bird.  *See* <u>Exhibit 2</u>.

295.    EuCyt's sales to Regenerative in November and December 2019 dropped $667,491.84 from September and October 2019.

296.    From January 1, 2019 to December 31, 2019, EuCyt's gross revenue was $2,293,574.86; Regenerative's exclusive purchases from EuCyt from May 1, 2019 to December 31, 2019 were $2,027,309.73.

297.    From January 1, 2020 to December 31, 2020, EuCyt's gross revenue was $514,150.95, and EuCyt was existing on loans; as Regenerative, EuCyt's major client in 2019, only purchased $118,947.22 of EuCyt's products in 2020.

298.    Bird's 2019 Schedule C tax return detailed EuCyt in 2019 had a "Net Loss for 2019: -2,503,305".  *See* <u>Exhibit 24</u>.

299.    EuCyt received less than reasonably equivalent value in exchange for the 2019 Bird Dividend to Bird, in fact Eucyt received no value for the transfer.

300.    EuCyt was insolvent on the date of 2019 Bird Dividend was made or became insolvent as a result of the 2019 Bird Dividend; or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital.

301.    The Account's ending balance as of October 31, 2019 was $640,089.25 (*see* <u>Exhibit 5</u>) and after the 2019 Bird Dividend, EuCyt's Account's ending balance as of November 30, 2019 was $71,409.53.  *Id*.

302.     On the date of the 2019 Bird Dividend, the Debtor intended to incur, or believed

that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

These debts included, but are not limited to, future litigation settlements due to E. Coli, as well as

ongoing increases in financial debt to keep the business operational.

303.     The 2019 Bird Dividend is subject to avoidance under Section 548 of the United

States Bankruptcy Code.

304.     Bird did not have "good faith" in receiving the 2019 Bird Dividend, as there was a

lack of an arm's length transaction, as Bird was at all times an insider, a member of EuCyt's sole

member EuCyt Holdings, and in control of EuCyt, made the transfer to himself.

305.     The Trustee is entitled to avoid 2019 Bird Dividend pursuant to 11 U.S.C. §§

548(a)(1)(B)(i) and (ii)(I), (II) and (III).

### COUNT V
### ACTUAL FRAUD
### <u>(11 U.S.C. § 548(a)(1)(A))</u>

<u>Plaintiff v. Travis H. Bird</u>

306.     The Plaintiff realleges and incorporates by reference the allegations of the previous

and following paragraphs as if fully set forth herein.

307.     11 U.S.C. § 548(a)(1)(A) provides in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for
> the benefit of an insider under an employment contract) of an interest of the
> debtor in property, or any obligation (including any obligation to or for the
> benefit of an insider under an employment contract) incurred by the debtor,
> that was made or incurred on or within 2 years before the date of the filing
> of the petition, if the debtor voluntarily or involuntarily-
>> (A) made such transfer or incurred such obligation with actual intent
>> to hinder, delay, or defraud any entity to which the debtor was or
>> became, on or after the date that such transfer was made or such
>> obligation was incurred, indebted; or …

308.     On November 8, 2019, Bird, the Count V Defendant, had EuCyt make an online

transfer in the amount of $500,000 to him for the "Dividend Yearly" 2019 Bird Dividend.  *See* Exhibit 5.

309.     The 2019 Bird Dividend, during the 548 Transfer Period, was an interest of the Debtor in property and constituted a Transfer to or for the benefit of Bird.

310.     Bird, upon information and belief, the sole member of EuCyt Holdings, LLC, was the beneficial owner of EuCyt, as he was paid by EuCyt the 2019 Bird Dividend.

311.     Bird in 2017 with his federal tax return filed a Schedule C "Profit or Loss From Business" for EuCyt LLC, and in 2018 and 2019 filed Schedule C's for EuCyt Laboratories, LLC.

312.     Bird was in control of the Debtor, as the Manager and CEO of EuCyt, at the time the 2019 Bird Dividend was made.

313.     Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

314.     Coats, the CFO of EuCyt, was the other signatory on EuCyt's Account, and Bird's right hand man as CFO of many of Bird's various entities.  Thus, either Coats or Bird made the actual 2019 Bird Dividend.

315.     The Debtor voluntarily or involuntarily made the $500,000 2019 Bird Dividend through the control of insider Bird.

316.     The 2019 Bird Dividend, during the 548 Transfer Period, was an interest of the Debtor in property and constituted a transfer to or for the benefit of Bird.

317.     Bird knew or should have known that on October 2 and on October 24, 2019, EuCyt had received independent lab results indicating their products had tested E. coli positive.

318.     Bird knew or should have known that on or before October 28, 2019, one lot of a batch of EuCyt product had tested positive for E. coli, but instead of testing other parts of the same

batch sent a part of the batch to Regenerative, which was tainted with E. coli.

319.     By October 31, 2019, Bird and EuCyt had received the Regenerative Notification.

320.     On November 4, 2019, the Center for Disease Control contacted EuCyt regarding the CDC Investigation.

321.     By November 8, 2019, the FDA notified Bird and EuCyt of the first FDA inspection on November 12, 2019.

322.     Mr. Autor of Regenerative was also on the November 8, 2019 phone call with the FDA, the State of Nebraska and Bird. *See* Exhibit 2.

323.     On November 8, 2019, Bird on behalf of EuCyt hired the Elliott Sauter law firm to help with the CDC/FDA investigation and with "being prepared for the potential lawsuits" from the E. coli Poisoning.

324.     After the October 30, 2019 E. coli event Bird knew it was  a major financial blow to EuCyt's business, so he transferred the 2019 Bird Dividend from the EuCyt account to himself while EuCyt still had resources before EuCyt's financial collapse.

325.      Bird transferred the 2019 Bird Dividend with actual intent to hinder, delay, and defraud creditors of the Estate, including but not limited to Regenerative and the potential litigation plaintiffs.

326.     EuCyt's sales to Regenerative, its major client in 2019, in November and December 2019 dropped $667,491.84 from September and October 2019.

327.     From January 1, 2019 to December 31, 2019, EuCyt's gross revenue was $2,293,574.86; Regenerative's exclusive purchases from EuCyt from May 1, 2019 to December 31, 2019 were $2,027,309.73.

328.     From January 1, 2020 to December 31, 2020, EuCyt's gross revenue was

$514,150.95, and EuCyt was existing on loans; as Regenerative, EuCyt's major client in 2019, only purchased $118,947.22 of EuCyt's products in 2020.

329.     Bird's 2019 Schedule C tax return detailed EuCyt in 2019 had a "Net Loss for 2019: -2,503,305". *See* Exhibit 24.

330.     EuCyt was insolvent on the date of the 2019 Bird Dividend was made or became insolvent as a result of the 2019 Bird Dividend; or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital.

331.     The Account's ending balance as of October 31, 2019 was $640,089.25 (*see* Exhibit 5) and after the 2019 Bird Dividend, EuCyt's Account's ending balance as of November 8, 2019 was $75,024.41 and as of November 30, 2019 was $71,409.53.  *See* Exhibit 5. The Account's ending balance as of December 31, 2019 was $19,086.90. *See* Exhibit 6.

332.     Bird did not have "good faith" in receiving the 2019 Bird Dividend, as there was a lack of an arm's length transaction, as Bird as an insider, a member of EuCyt's sole member EuCyt Holdings, and in control of EuCyt made the transfer to himself.

333.     Bird, with the Friday, October 31, 2019 actual notice of the Thursday, October 30, 2019 E. coli Poisoning, with the CDC telephone call on Tuesday, November 4, 2019, with the FDA and CDC November 8, 2019 telephone call, and being notified of the upcoming Tuesday, November 12, 2019 first FDA inspection; Bird on November 8, 2019 had actual intent to have EuCyt make an online transfer in the amount of $500,000 to him for the 2019 Bird Dividend to defraud the creditors of EuCyt. *See* Exhibit 5.

334.     The 2019 Bird Dividend was made to Bird as Bird had "actual intent to hinder, delay, or defraud" the Debtor and the Estate's creditors, and at minimum, to delay or hinder distributions to the Estate's creditors.

335.    In accordance with the foregoing, the 2019 Bird Dividend is avoidable pursuant to

11 U.S.C. § 548(a)(1)(A).


## COUNT VI
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## (11 U.S.C. § 548(a)(1)(B)

Plaintiff v. Travis H. Bird, AVEM Holdings, LLC, AVEM Biopharmaceuticals, LLC,
AVEM Labs, LLC, AVEM Medical and the John Doe Entities and Debtor Affiliated Entities

336.    The Plaintiff realleges and incorporates by reference the allegations of the previous

and following paragraphs as if fully set forth herein.

337.    11 U.S.C. 548(a)(1)(B) states:

> (i)     received less than a reasonably equivalent value in exchange
> for such transfer or obligation; and

> (ii)
> (I) was insolvent on the date that such transfer was made or
> such obligation was incurred, or became insolvent as a result of such
> transfer or obligation;

> (II) was engaged in business or a transaction, or was about
> to engage in business or a transaction, for which any property
> remaining with the debtor was an unreasonably small capital;

> (III) intended to incur, or believed that the debtor would
> incur, debts that would be beyond the debtor's ability to pay as such
> debts matured; or…

338.    Count VI is a cause of action against Bird, AVEM Holdings, AVEM

Biopharmaceuticals, LLC, AVEM Labs, AVEM Medical, the John Doe Entities, and the Debtor

Affiliated Entities (the "Count VI Defendants") regarding transfers by EuCyt (of any EuCyt Assets

and Property transferred at any point in time to various, some unspecified, entities all controlled

and at least in part owned by Bird), of "EuCyt Assets and Property", including but not limited to

the February–July 2020 Asset Transfers by Bird to the Debtor Affiliated Entities, the KHIND

Fraudulent Investment Transfers, the AVEM Holdings/EuCyt Intellectual Property Agreement, the Assets transferred to AVEM Holdings pursuant to the Distribution and Contribution Agreement, the transfers of the Products to Debtor Affiliated Entities, including the transfer of NANOCYT to AVEM Medical, the transfer of COVIXO nka ARDOXSO™ to AVEM Holdings and/or AVEM Biopharmaceuticals, and/or AVEM Labs and the ARDOXSO™ Clinical Trial Transfer, during the 548 Transfer Period, (collectively, the "Count VI 548 Transfers").

339.    The EuCyt Assets and Property constitutes property of the Debtor, and of the Estate pursuant to Section 542(a) of the Bankruptcy Code, and therefore any transfer thereof may be avoided and recovered by the Trustee.

340.    Bird, the beneficial owner of EuCyt through EuCyt Holdings, as well as EuCyt's Manager, CEO, and in control of EuCyt, transferred the EuCyt Assets and Property to himself and to the various of the Count VI Defendants which he controls and owns.  Bird did not disclose which specific assets he and EuCyt transferred or to which specific entity received the specific asset.

341.    Count VI, in part, seeks to avoid the fraudulent transfer of COVIXO to whichever entity that claims sole ownership or shared ownership of COVIXO (renamed ARDOXSO post-transfer), including but not limited to AVEM Holdings and/or AVEM Biopharmaceuticals, and/or AVEM Labs (or other Debtor Affiliated Entities), who were named on the Draft November 24, 2020 Documents for the fraudulent transfer for the FDA Clinical Trial IND for COVIXO.

342.    As set forth in detail above, each of the Count VI 548 Transfers was made by the Debtor, through Bird, and was transferred to or for the benefit of Bird to the Count VI Defendants.

343.     Each of the Count VI 548 Transfers was an interest of the Debtor in property and was transferred to or for the benefit of Bird and the Count VI Defendants, including any Debtor Affiliated Entities.

344.     Bird was in control of the Debtor as the Manager and CEO of EuCyt, and an beneficial owner of EuCyt through EuCyt Holdings.

345.     Bird was in control of the Debtor at the time the Count VI 548 Transfers were made.

346.     Bird in 2017 with his federal tax return filed a Schedule C "Profit or Loss From Business" for EuCyt LLC, and in 2018 and 2019 filed Schedule C's for EuCyt Laboratories, LLC.

347.     Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

348.     The Debtor, through Bird, made and Bird and/or the Count VI Defendants received the Count VI 548 Transfers from the Debtor on or within two years prior to the Petition Date.

349.     The Debtor voluntarily or involuntarily made the Count VI 548 Transfers through the control of insider Bird.

350.     The Count VI 548 Transfers were not reasonably equivalent in value to the consideration received by the Debtor, in fact, the Debtor received no value in exchange for the Count VI 548 Transfers.

351.     Bird and/or the Count VI Defendants received and benefited from the Count VI 548 Transfers from the Debtor.

352.     The Debtor and Bird concealed the Count VI 548 Transfers from creditors of the Debtor.

353.     Bird's 2019 Schedule C tax return detailed EuCyt in 2019 had a "Net Loss for 2019: -2,503,305". *See* Exhibit 24.

354.     On the dates the Count VI 548 Transfers were made, the Debtor was insolvent or became insolvent as a result of the Count VI 548 Transfers.

355.     On the dates of the Count VI 548 Transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital, as Bird has testified EuCyt was closing down circa May and June of 2020 and in the process was transferring assets.

356.     On the dates of the Count VI 548 Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured, as EuCyt was closing down operations and preparing to file bankruptcy.

357.     The Trustee avers that at the time Bird and the Count VI Defendants received the Count VI 548 Transfers from the Debtor, the Debtor was unable to pay its debts as they came due.

358.     The Count VI 548 Transfers are subject to avoidance under Section 548 of the United States Bankruptcy Code.

359.     Bird and the other Count VI Defendants did not have "good faith" in receiving the Count VI 548 Transfers , as there was a lack of an arm's length transaction with Bird as an insider and beneficial owner of EuCyt controlling the Count VI 548 Transfers to himself and the Count VI Defendants all of which he owns and/or controls.

360.     The Trustee is entitled to avoid the Count VI 548 Transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I), (II) and (III).

**COUNT VII**
**ACTUAL FRAUD**
**(11 U.S.C. § 548(a)(1)(A))**

Plaintiff v. Travis H. Bird, AVEM Holdings, LLC, AVEM Biopharmaceuticals, LLC, AVEM
Labs, LLC, AVEM Medical, LLC and the John Doe Entities and Debtor Affiliated Entities

361.    The Plaintiff realleges and incorporates by reference the allegations of the previous

and following paragraphs as if fully set forth herein.

362.    11 U.S.C. § 548(a)(1)(A) provides in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for
> the benefit of an insider under an employment contract) of an interest of the
> debtor in property, or any obligation (including any obligation to or for the
> benefit of an insider under an employment contract) incurred by the debtor,
> that was made or incurred on or within 2 years before the date of the filing
> of the petition, if the debtor voluntarily or involuntarily-
>
> > (A) made such transfer or incurred such obligation with actual intent
> > to hinder, delay, or defraud any entity to which the debtor was or
> > became, on or after the date that such transfer was made or such
> > obligation was incurred, indebted; or …

363.    Count VII is an action against Bird, AVEM Holdings, AVEM Biopharmaceuticals,

AVEM Labs, AVEM Medical the John Doe Entities and any other Debtor Affiliated Entities (the

"Count VII Defendants") regarding transfers by EuCyt (of any EuCyt Assets and Property

transferred at any point in time to various, some unspecified, entities all controlled and at least in

part owned by Bird), of "EuCyt Assets and Property", including but not limited to the EuCyt 2019–

2020 Sales and Shipments to MediSource, the 2019-2020 income payments to EuCyt that were

allegedly shared or split with Medisource/Avem Medical, the "Alleged Diversion Payments", the

February–July 2020 Asset Transfers by Bird to the Debtor Affiliated Entities, the KHIND

Fraudulent Investment Transfers, the AVEM Holdings/EuCyt Intellectual Property Agreement,

the Assets transferred to AVEM Holdings pursuant to the Distribution and Contribution

Agreement, including but not limited to EuCyt's lab equipment, the transfers of the Products to

John Doe Entities, including the transfer of NANOCYT to AVEM Medical, the transfer of COVIXO nka ARDOXSO™ to AVEM Holdings and/or AVEM Biopharmaceuticals, and/or AVEM Laboratories, and the ARDOXSO™ Clinical Trial Transfer, during the 548 Transfer Period, (collectively, the "Count VII 548 Transfers").

364.    For Count VII the Debtor Affiliated Entities are defined within "Bird".

365.    The EuCyt Assets and Property constitutes property of the Debtor, and of the Estate pursuant to Section 542(a) of the Bankruptcy Code, and therefore any transfer therefor may be avoided and recovered by the Trustee pursuant to Section 548.

366.    Each of the Count VII 548 Transfers was an interest of the Debtor in property and were made by the Debtor, through Bird, and was transferred to or for the benefit of Bird and the Count VII Defendants.

367.    Bird, the beneficial owner of EuCyt through EuCyt Holdings, as well as EuCyt's Manager, CEO, and in control of EuCyt, transferred the EuCyt Assets and Property to Bird and the Count VII Defendants which he controls and owns.

368.    The Debtor voluntarily or involuntarily made the Count VII 548 Transfers through the control of insider Bird.

369.    Bird in 2017 with his federal tax return filed a Schedule C "Profit or Loss From Business" for EuCyt LLC, and in 2018 and 2019 filed Schedule C's for EuCyt Laboratories, LLC.

370.    Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

371.    The Debtor, through Bird, made and Bird and the Count VII Defendants received the Count VII 548 Transfers from the Debtor on or within two years prior to the Petition Date.

372. Bird and the Count VII Defendants received and benefited from the Count VII 548 Transfers from the Debtor.

373. Count VII in part, seeks to avoid the fraudulent transfer of COVIXO to whichever entity that claims sole ownership or shared ownership of COVIXO (renamed ARDOXSO post-transfer), including but not limited to AVEM Holdings and/or AVEM Biopharmaceuticals, and/or AVEM Labs (or other Debtor Affiliated Entities), who were named on the Draft November 24, 2020 Documents for the fraudulent transfer for the FDA Clinical Trial IND for COVIXO.

374. The Count VII 548 Transfers were made by the Debtor and Bird with the actual intent to hinder, delay, or defraud creditors of the Debtor.

375. The Debtor, Bird, and Coats concealed the Count VII 548 Transfers on the Schedules, on the S.O.F.A. and at the 341 Meeting, from the Trustee and the creditors of the Debtor, including but not limited to the following acts of concealment or fraud:

    a.    under S.O.F.A., Part 2, 4. (or under S.O.F.A., Part 6, 13): "Payments or other transfers of property made within 1 year before filing this case that benefited any insider", with a duty to disclose, allegedly Coats prepared the S.O.F.A. and Bird signed under the penalty of perjury Bird, they did not disclose:

- the February-July 2020 Asset Transfers (defined *infra*),

- or the transfer pursuant to the AVEM Holdings/EuCyt Intellectual Property Agreement (defined *infra*);

- the KHIND Fraudulent Investment Transfers (defined *infra*);

- or that on August 1, 2020 EuCyt transferred assets and liabilities to AVEM Holdings, and/or the Debtor Affiliated Entities, pursuant to the "Distribution and Contribution Agreement", of which, upon information

and belief, Bird is the sole member and owner of AVEM Holdings, LLC;

- or that the transfer of COVIXO to AVEM Holdings or one of his other entities;

- or the $122,010.00 Count VII Coats/AVEM Labs Transfers (defined *infra*) to which he benefited,

- or the $256,899.11 Count VIII AVEM Diagnostics Transfers (defined *infra*) to which he benefited,

- or the November 2020 transfer of the COVIXO Clinical Study with the FDA to AVEM Holdings and the ARDOXSO™ Clinical Trial Transfer (defined *infra*);

b.      at the 341 Meeting, Bird testified under oath that on August 1, 2020, EuCyt transferred [undefined] assets and [undefined] liabilities to AVEM Holdings pursuant to the "Distribution and Contribution Agreement"; and

c.      at the 341 Meeting, testified the old EuCyt file cabinets in the AVEM Diagnostics Leased Premises office in Las Vegas are only accessible by Bird.

376.    The Count VII 548 Transfers were not reasonably equivalent in value to the consideration received by the Debtor. In fact, the Debtor received no value in exchange for the Count VII 548 Transfers.

377.    Bird, as CFO, and Manager, had access to the financial statements of the Debtor.

378.    Bird and the Count VII Defendants, through the knowledge of Bird, knew or should have known that the Debtor was insolvent during the time the Count VII 548 Transfers were made.

379.    On the dates each of the Count VII 548 Transfers were made, the Debtor was insolvent or became insolvent as a result of the Count VII 548 Transfers.

380.     Bird's 2019 Schedule C tax return detailed EuCyt in 2019 had a "Net Loss for 2019: -2,503,305". *See* Exhibit 24.

381.     On the dates of the Count VII 548 Transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital, as Bird has testified EuCyt was closing down circa May and June of 2020 and in the process was transferring assets and anticipating "dissolving".

382.     The Trustee avers that at the time Bird and the Count VII Defendants received the Count VII 548 Transfers from the Debtor, the Debtor was unable to pay its debts as they came due.

383.     The Count VII 548 Transfers are subject to avoidance under Section 548 of the United States Bankruptcy Code.

384.     Bird and the other Count VII Defendants did act in "good faith" in receiving the Transfers, as there was a lack of an arm's length transaction with Bird as an insider and beneficial owner of EuCyt controlling the Count VII 548 Transfers to himself, and the Count VI Defendants, all of which he owns and/or controls.

385.     The Trustee is entitled to avoid the Count VII 548 Transfers and/or Obligations pursuant to 11 U.S.C. §§ 548(a)(1)(A).

## COUNT VIII
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## (11U.S.C. § 548(a)(1)(B))

Plaintiff v. Aaron Coats, AVEM Labs, LLC, AVEM Medical, LLC and Travis Bird

386.     The Plaintiff realleges and incorporates by reference the allegations of the previous and following paragraphs as if fully set forth herein.

387.    Count VIII is an action against Coats, AVEM Labs, AVEM Medical, and Bird (the "Count VIII Defendants").

388.    Coats was in control of the Account as CFO of EuCyt.

389.    Coats made the $74,010.00 in Withdrawals from the Account (the "Coats $74,010.00 Transfers"). *See* <u>Exhibit 20</u>.  EuCyt's 2020 General Ledger lists AVEM Labs benefitting from the first two Withdrawals and AVEM Medical benefitting from the third Withdrawal, as Bird is the beneficial owner of AVEM Labs and sole owner of AVEM Medical, he is listed as a defendant benefitting from the Coats $74,010.00 Transfers.

390.    Coats signed the three EuCyt Checks for $48,000.00 made to AVEM Labs within sixteen (16) days of the Petition Date (the "AVEM Labs $48,000.00 Transfers"). *See* <u>Exhibit 21</u>.

391.    Bird is the beneficial owner of AVEM Labs and is a defendant benefitting from the AVEM Labs $48,000.00 Transfers.

392.    The AVEM Checks, the Account's December 2020 Bank Statement, and EuCyt's 2020 General Ledger do not indicate any reason for the AVEM Labs $48,000.00 Transfers

393.    The "Coats $74,010.00 Transfers" and the "AVEM Labs $48,000.00 Transfers" total $122,010.00 and are collectively the "Count VIII Transfers"). *See* <u>Exhibit A Coats/AVEM Labs</u>.

394.    Coats made, received and benefited from the Coats $74,010.00 Transfers within two years prior to the Petition Date.

395.    AVEM Medical received and or benefited from $10,000.00 of the Withdrawals.

396.    AVEM Labs received and or benefited from $64,010.00 of the Withdrawals and from the AVEM Labs $48,000.00 Transfers (Count VIII Transfers to AVEM Labs total $112,010.00).

397. Bird as the owner of AVEM Medical and beneficial owner of AVEM Labs benefited from the Coats $74,010.00 Transfers and from the AVEM Labs $48,000.00 Transfers (Bird benefited from Count VIII Transfers totaling $122,010.00).

398. The Count VIII Transfers, during the 548 Transfer Period, were an interest of the Debtor in property and constituted transfers to or for the benefit of the Count VIII Defendants.

399. The Debtor voluntarily or involuntarily made the Count VIII Transfers through the control of insiders Bird and Coats.

400. The Count VIII Defendants received and benefited from the Count VIII Coats/AVEM Labs Transfers from the Debtor.

401. EuCyt received less than a reasonably equivalent value in exchange for the Count VIII Transfers to the Count VIII Defendants and was insolvent on the dates the Count VIII Transfers were made or became insolvent as a result of the Count VIII Transfers.

402. On the dates of the Count VIII Transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

403. On the date of the Count VIII Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

404. The Count VIII Transfers are subject to avoidance under 11 U.S.C. § 548.

405. The Debtor, Bird, and Coats concealed the Count VIII Transfers on the Schedules, on the S.O.F.A., at the 341 Meeting, from the Trustee and the creditors of the Debtor.

406. Coats did not act in "good faith" in making the Withdrawals, in signing the three Checks for AVEM Labs, and in receiving the Count VIII Transfers, as there was a lack of an arm's

length transaction, as Coats was an insider, as the CFO of EuCyt and CFO of AVEM Labs, and CFO of AVEM Medical.

407.     Bird did not act in "good faith" as there was a lack of an arm's length transaction, he was the beneficial owner of EuCyt when he received the benefit of the Count VIII Transfers as the beneficial owner of AVEM Labs and the sole owner of AVEM Medical.

408.     Coats and Bird have not produced any documents to the Trustee regarding the Count VIII Transfers.

409.     The Trustee is entitled to avoid the Count VIII Transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I), (II) and (III).

## COUNT IX
## AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
## (11 U.S.C. § 548(a)(1)(B))

### Plaintiff v. AVEM Diagnostics, LLC and Bird

410.     The Plaintiff realleges and incorporates by reference the allegations of the previous and following paragraphs as if fully set forth herein.

411.     This is an action against AVEM Diagnostics and Bird (the "Count IX Defendants) in the amount of $321,694.59 (the "Count IX Transfers"), which includes the $189,868.97 New Lab Costs, the $72,991.32 Datacor Transfers and the $58,834.30 Paid Rent which total $321,694.59 in value transferred to AVEM Diagnostic and Bird. *See* Exhibit B AVEM Diagnostics; *see also* Exhibit 7.

412.      Bird testified at the 341 Meeting that AVEM Diagnostic, headquartered in Dallas, Texas, in August of 2020 took over the Leased Premises, was assigned the Lease, and occupies EuCyt's Leased Premises in Las Vegas, Nevada.

413.     Bird, at minimum, is the beneficial owner of AVEM Diagnostic.

414. Bird is an "insider" of the Debtor, as that term is defined pursuant to 11 U.S.C. section 101(31)(B), or at minimum a non-statutory insider.

415. EuCyt made and AVEM Diagnostic and Bird received the Count IX Transfers from the Debtor on or within two years prior to the Petition Date.

416. The Count IX Transfers, during the 548 Transfer Period, were an interest of the Debtor in property and constituted transfers to or for the benefit of AVEM Diagnostic and Bird.

417. The Debtor voluntarily or involuntarily made the Count IX Transfers through the control of insider Bird.

418. AVEM Diagnostic and Bird benefited from the Count IX Transfers from the Debtor.

419. EuCyt received less than a reasonably equivalent value in exchange for the Count IX Transfers to AVEM Diagnostic and Bird and was insolvent on the dates the Count IX Transfers were made or became insolvent as a result of the Count IX Transfers.

420. On the dates of the Count IX Transfers, the Debtor was engaged in a business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

421. On the date of the Count IX Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

422. Bird, CEO of EuCyt, as the beneficial owner of EuCyt, and at minimum an beneficial owner of AVEM Diagnostics did not act in "good faith" in making the Count IX Transfers, as there was a lack of an arm's length transaction.

423. Bird and Coats have not produced documents regarding the assignment or assumption of the Leased Premises to AVEM Diagnostics, LLC.

424.    The Trustee is entitled to avoid the Count IX Transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I), (II) and (III).

## COUNT X
## RECOVERY OF FRAUDULENT AND PREFERENTIAL TRANSFERS
## (11 U.S.C. § 550)

Plaintiff v. Travis H. Bird, AVEM Holdings, LLC,
AVEM Biopharmaceuticals, LLC, Aaron Coats, AVEM Labs, LLC, AVEM Medical, LLC,
AVEM Diagnostics, LLC and the John Doe Entities and remaining Debtor Affiliated Entities

425.    The Plaintiff realleges and incorporates by reference the allegations of the previous and following paragraphs as if fully set forth herein.

426.    11 U.S.C. § 550 provides in pertinent part:

(a)    … to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee….

**Recovery Of Fraudulent Transfers Under Counts IV And V**

427.    Trustee is entitled to avoid the 2019 Bird Dividend under 11 U.S.C. § 548 of the Bankruptcy Code as set forth in Counts IV and V.

428.    Bird was the initial transferee of the 2019 Bird Dividend or the immediate or mediate transferee of such initial transferee or the person for whose benefit the 2019 Bird Dividend was made.

429.    Bird did not take the 2019 Bird Dividend in good faith.

430.    Pursuant to 11 U.S.C. § 550(a) the Plaintiff is entitled to recover from Bird the 2019 Bird Dividend, and the costs of this action.

### Recovery Of Fraudulent Transfers Under Count VI

431.     Trustee is entitled to avoid the Count VI 548 Transfers from the Count VI Defendants pursuant to 11 U.S.C. § 548.

432.     The Count VI Defendants were the initial transferees of the Count VI 548 Transfers or the immediate or mediate transferees of such initial transferee or the person for whose benefit the Count VI 548 Transfers were made.

433.     The Count VI Defendants did not take the Count VI 548 Transfers in good faith.

434.     Pursuant to 11 U.S.C. § 550(a) the Plaintiff is entitled to recover from the Count VI Defendants the Count VI 548 Transfers, and the costs of this action.

### Recovery Of Fraudulent Transfers Under Counts VII

435.     Trustee is entitled to avoid the Count VII 548 Transfers from the Count VII Defendants pursuant to 11 U.S.C. § 548.

436.     The Count VII Defendants were the initial transferees of the Count VII 548 Transfers or the immediate or mediate transferees of such initial transferee or the person for whose benefit the Count VII 548 Transfers were made.

437.     The Count VII Defendants did not take the Count VII 548 Transfers in good faith.

438.     Pursuant to 11 U.S.C. § 550(a) the Plaintiff is entitled to recover from the Count VII Defendants the Count VII 548 Transfers, and the costs of this action.

### Recovery Of Fraudulent Transfers Under Counts VIII

439.     Trustee is entitled to avoid the Count VIII Transfers from the Count VIII Defendants pursuant to 11 U.S.C. § 548.

440.     Coats, and/or AVEM Labs, and/or AVEM Medical, and/or Bird were the initial transferees of the Count VIII Transfers or the immediate or mediate transferees of such initial

transferees or the person for whose benefit the Count VIII Transfers were made.

441.    Coats, and/or AVEM Labs, and/or AVEM Medical, and/or Bird did not take the Count VIII Transfers in good faith.

442.    Pursuant to 11 U.S.C. § 550(a) the Plaintiff is entitled to recover from Coats, and/or AVEM Labs, and/or AVEM Medical, and/or Bird the Count VIII Transfers, and the costs of this action.

**Recovery Of Fraudulent Transfers Under Counts IX**

443.    Trustee is entitled to avoid the Count IX Transfers from AVEM Diagnostics and Bird.

444.    AVEM Diagnostics and Bird were the initial transferees of the Count IX Transfers or the immediate or mediate transferees of such initial transferee or the person for whose benefit the Count IX Transfers were made.

445.    AVEM Diagnostics and Bird did not take the Count IX Transfers in good faith.

446.    Pursuant to 11 U.S.C. § 550(a) the Plaintiff is entitled to recover from AVEM Diagnostics and Bird the Count IX Transfers, and the costs of this action.

**COUNT XI - UNJUST ENRICHMENT**

Plaintiff v. Travis H. Bird, AVEM Holdings, LLC, AVEM Biopharmaceuticals, LLC,
AVEM Labs, LLC, AVEM Diagnostics, LLC and the John Doe Entities
and remaining Debtor Affiliated Entities

447.    The Plaintiff realleges and incorporates by reference the allegations of the previous paragraphs as if fully set forth herein.

448.    Bird has received the benefit of the 2019 Bird Dividend, Bird has failed without justification to remit to the Debtor or the Plaintiff the 2019 Bird Dividend, thus it is inequitable for Bird to retain the 2019 Bird Dividend.

449.     The Count VI Defendants and the Count VII Defendants have received the benefit of the EuCyt Assets and Property.

450.     The Count VI Defendants and the Count VII Defendants have failed without justification to remit to the Debtor or the Plaintiff the EuCyt Assets and Property.

451.     Thus, it is inequitable for the Count VI Defendants and the Count VII Defendants to retain the EuCyt Assets and Property.

452.     AVEM Diagnostics and Bird have received the benefit of the $321,694.59 Count IX Transfers.

453.     AVEM Diagnostics and Bird have failed without justification to remit to the Debtor or the Plaintiff the $321,694.59 Count IX Transfers.

454.     Thus, it is inequitable for AVEM Diagnostics and Bird to retain the $321,694.59 Count IX Transfers.

## RESERVATION OF RIGHTS

455.     The Plaintiff hereby expressly reserves his rights to commence any and all other causes of action that he may maintain against the Defendants, by amending this Complaint or by separate action, including without limitation, by seeking to recover any avoidable amounts due from the Defendants, or by seeking to recover from the Defendants any other assets of the Debtor's Estate that are in the actual or constructive possession or control of the Defendants via state or federal avoidance action or fraudulent conveyance action, or other actions.

456.     The Plaintiff also reserves the right to assert objections to any claims that the Defendants may have against the Debtor's Estate.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court grant him the following relief against Defendants:

A.      directing Coats and Bird, pursuant to Count I under 11 U.S.C. §542(e) to immediately turnover to the Plaintiff the EuCyt Documents;

B.      directing Bird, AVEM Holdings, AVEM Medical, the John Doe Entities, and any Debtor Affiliated Entities, pursuant to Count II under 11 U.S.C. §542(a), to immediately turnover to the Plaintiff the EuCyt Assets and Property as property of the Estate;

C.      for an accounting as set forth in Count III;

D.      avoiding the 2019 Bird Dividend to Bird pursuant to 11 U.S.C. § 548 of the Bankruptcy Code;

E.      for a judgment against Bird in the amount of $500,000, representing the amount by which Bird has been unjustly enriched;

F.      avoiding the EuCyt Assets and Property Transfers to the Count VI Defendants, the Count VI 548 Transfers pursuant to 11 U.S.C. § 548 of the Bankruptcy Code;

G.      avoiding the EuCyt Assets and Property Transfers to the Count VII Defendants, the Count VII 548 Transfers pursuant to 11 U.S.C. § 548 of the Bankruptcy Code;

H.      for judgment against the Count VI Defendants and Count VII Defendants in turning over the EuCyt Assets and Property Transfers, representing the assets and property by which the Count VI Defendants and Count VII Defendants has been unjustly enriched;

I.     avoiding the $122,010.00 Count VIII Transfers to the Count VIII Defendants pursuant to 11 U.S.C. § 548 of the Bankruptcy Code;

J.     avoiding the $256,899.11 Count IX Transfers to AVEM Diagnostics and Bird pursuant to 11 U.S.C. § 548 of the Bankruptcy Code;

K.     for a judgment against AVEM Diagnostic and Bird in the amount of $256,899.11, representing the amount by which AVEM Diagnostic and Bird have been unjustly enriched;

L.     Granting judgment in favor of the Plaintiff against Bird in an amount of at least $500,000 pursuant to Counts IV and V (the "Bird $500,000 Judgment Amount");

M.     Requiring Bird to immediately to pay the Bird $500,000 Judgment Amount to the Plaintiff pursuant to 11 U.S.C. § 550(a);

N.     Granting judgment in favor of the Plaintiff against the Count VI Defendants and/or the Count VII Defendants and the turnover of the EuCyt Assets and Property Transfers (the "Count VI or Count VII Judgment");

O.     Requiring the Count VI and/or the Count VII Defendants to immediately to turnover the Count VI or Count VII Judgment to the Plaintiff pursuant to 11 U.S.C. § 550(a);

P.     Granting judgment in favor of the Plaintiff against the Count VIII Defendants in an amount of at least $122,010.00 (the "Count VIII Judgment Amount"):

    a.     granting judgment in favor of the Plaintiff against Aaron Coats in an amount of $74,010;

    b.      granting judgment in favor of the Plaintiff against AVEM Labs, LLC in an amount of $112,101.00;

    c.     granting judgment in favor of the Plaintiff against AVEM Medical, LLC in an amount of $10,000.00; and

d.      granting judgment in favor of the Plaintiff against Travis H. Bird in an amount of $122,010.00.

Q.      Requiring the Count VIII Defendants to immediately to pay the Count VIII Judgment Amount to the Plaintiff pursuant to 11 U.S.C. § 550(a);

R.      Granting judgment in favor of the Plaintiff against AVEM Diagnostics and Bird in an amount of at least $321,694.59 (the "Count IX Judgment Amount");

S.      Requiring the AVEM Diagnostics and Bird to immediately to pay the Count IX Judgment Amount to the Plaintiff pursuant to 11 U.S.C. § 550(a);

T.      Disallowing pursuant to 11 U.S.C. § 502 any Claims of the Defendants, and/or their assignees, if Defendants refuse to turn over any transfers to the Plaintiff;

U.      Awarding pre-judgment and post judgment interest at the maximum legal rate until the date the judgment is paid in full, plus costs;

V.      Granting the Plaintiff such other and further relief as the Court deems just and proper.

Dated: December 22, 2022.

                                        **COOCH AND TAYLOR, P.A.**

                                        /s/ *R. Grant Dick IV*
                                        R. Grant Dick IV (No. 5123)
                                        The Nemours Building
                                        1007 N. Orange Street, Suite 1120
                                        Wilmington, DE 19801
                                        Phone: 302-984-3867
                                        Facsimile: 302-984-3939
                                        gdick@coochtaylor.com

                                        *Special Counsel for Jeoffrey L. Burtch Chapter 7 Trustee for EuCyt Laboratories, LLC*